WILLIS v NIENOW

WILLIS v DEPARTMENT OF SOCIAL SERVICES

Docket Nos. 50894, 52848. Submitted June 10, 1981, at Grand Rapids.
—Decided February 2, 1982. Leave to appeal applied for.

Mary O. Willis, as administratrix of the estate of Jeffrey Willis,
deceased, brought suit against Dennis Nienow, Erma Knox, and
Cindy Hunt, jointly and severally, in Muskegon Circuit Court
and against the state of Michigan, Department of Social Ser-
vices, in the Court of Claims, alleging tort liability on the part
of defendants. Jeffrey Willis, a 16-year-old resident of a juvenile
care facility for delinquent and neglected youths, of which
Nienow was the director, operated by the Department of Social
Services drowned while on a swimming outing supervised by
Knox, a counselor, and Hunt, a student-intern with the care
facility. The Court of Claims, Jack W. Warren, J., granted
summary judgment for the State of Michigan, Department of
Social Services. The Muskegon Circuit Court, R. Max Daniels,
J., granted summary judgment to defendants Nienow, Knox,
and Hunt, based on governmental immunity. The plaintiff
appeals. The Court of Appeals consolidated the cases on appeal.
*Held:*

Operation of the juvenile care facility constitutes a govern-
mental function. Recreational activities such as a swimming
outing are directly related to an effective program of out-of-
home care for delinquent or neglected children. The plaintiff
failed to state a cause of action for an intentional tort. A
decision that a program of out-of-home care should include
swimming outings is a discretionary act. Plaintiff did not claim
that the underlying policy decision to have swimming outings

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 27,
28.
   73 Am Jur 2d, Statutes § 208.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 27,
28.
[3] 61A Am Jur 2d, Pleading § 109.
   74 Am Jur 2d, Torts § 21.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 45, 85.

was negligent; rather, plaintiff charged negligence in the manner in which the particular swimming outing was conducted. The acts which the plaintiff alleged to have been negligent are for the most part analogous to ministerial acts. Ministerial acts performed by a public employee in carrying out a governmental function are not within the scope of governmental immunity. The decision of the Court of Claims in the action against the Department of Social Services is affirmed. The decision of the circuit court in the action against Nienow, Knox and Hunt is reversed except for the circuit court's disposition of the allegation concerning defendant Nienow's exercise of his hiring powers. With respect to that allegation, the circuit court is affirmed.

Affirmed in part, reversed in part, and remanded.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — STATUTES.

The term "governmental function" as used in the statute providing that governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a "governmental function" is subject to judicial refinement and that term is limited to those activities which are of essence to governing (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — JUVENILE CARE FACILITY — RECREATIONAL ACTIVITIES — STATUTES.

Operation of a juvenile care facility for delinquent or neglected children, including recreational activities for the children, constitutes a governmental function for purposes of application of the governmental tort immunity statute (MCL 691.1407; MSA 3.996[107]).

3. TORTS — INTENTIONAL TORTS — PLEADINGS.

A complaint alleging that a defendant's acts were reckless, wanton and willful does not constitute an allegation of an intentional tort where the complaint does not also allege an intentional act by the defendant or allege that the defendant had actual knowledge of a danger and acted in intentional disregard of that danger.

4. GOVERNMENTAL IMMUNITY — PUBLIC EMPLOYEES — DISCRETIONARY ACTS — MINISTERIAL ACTS.

Discretionary acts performed by a public employee in carrying out a governmental function are within the scope of governmental tort immunity while ministerial acts performed by a

public employee are not within the scope of governmental tort immunity.

*Baxter & Hammond* and *Bernstein & Bernstein, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *William K. Basinger,* Assistants Attorney General, for defendant. Department of Social Services.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for defendant Hunt.

Before: D. F. WALSH, P.J., and MACKENZIE and J. R. ERNST,* JJ.

MACKENZIE, J. These cases arose out of the same incident and were consolidated on appeal. Plaintiff is the administratrix of the estate of Jeffrey Willis. On August 16, 1978, 16-year-old Jeffrey was a resident of Harbor House, a juvenile care facility for delinquent and neglected youths operated by defendant Department of Social Services. At Harbor House, defendant Dennis Nienow was the director, defendant Erma Knox was a counselor, and defendant Cindy Hunt was a student-intern. Jeffrey and other Harbor House residents were taken for a swimming outing on Lake Michigan under the supervision of Knox and Hunt. Jeffrey drowned in the course of the outing.

Plaintiff brought actions against defendants State of Michigan and Department of Social Services in the Court of Claims and against defendants Nienow, Knox, and Hunt in circuit court. Plaintiff's complaints alleged that Jeffrey and Knox could not swim or were of marginal swimming ability, that neither Knox nor Hunt had lifesaving training, that there were no lifeguards

* Circuit judge, sitting on the Court of Appeals by assignment.

on duty at the time in question, that Jeffrey and other Harbor House residents were allowed to swim in areas not designated as swimming areas, and that Jeffrey and the other residents were allowed to swim under dangerous weather conditions. In each case the trial court granted summary judgment for defendants based on governmental immunity, and plaintiff appeals by right.

## I

Plaintiff argues that the defendants were not engaged in a governmental function by operating Harbor House, or alternatively, by conducting a swimming outing for Harbor House residents. Plaintiff's argument requires us once again to interpret the decisions of the Supreme Court in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). Those cases considered the meaning of the term "governmental function" in MCL 691.1407; MSA 3.996(107), which provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

No clear majority position emerged in *Parker* and *Perry,* but this Court has consistently applied the test formulated by Justice MOODY who emerged as the "swing vote" in those cases. See, for example, *Cronin v Hazel Park,* 88 Mich App 488; 276 NW2d 922 (1979), *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979),

*Rubino v Sterling Heights,* 94 Mich App 494; 290
NW2d 43 (1979), and *Davis v Detroit,* 98 Mich App
705; 296 NW2d 341 (1980). Justice MOODY agreed
with Justices FITZGERALD, KAVANAGH, and LEVIN
that the statutory term "governmental function"
is subject to judicial refinement and that the term
is limited to those activities which are of essence
to governing. However, Justice MOODY's view of
that test differs from that of his colleagues. See
*Parker, supra,* 200:

"To delineate a complete and balanced definition of
governmental function within a simplistic format would
be presumptuous. However, as a basic guideline, the
crux of the governmental essence test should be
founded upon the inquiry whether the purpose, plan-
ning and carrying out of the activity, due to its unique
character or governmental mandate, can be effectively
accomplished only by the government. Unless liability
would be an unacceptable interference with govern-
ment's ability to govern, activities that fall outside this
perimeter, although performed by a government
agency, are not governmental functions and therefore
not immune."

In *Parker,* Justice MOODY found five factors
which indicated that the operation of a general
hospital is not a governmental function: (1) the
number of private general hospitals is far greater
than the number of governmental hospitals; (2) the
fiscal involvement of government in the operation
of general hospitals is significantly displaced by
private payment; (3) government has little direct
responsibility for placing patients in general hospi-
tals; (4) the day-to-day care afforded most patients
in general hospitals is not of a unique governmen-
tal character or precipitated by governmental
mandate; and (5) liability would not be an unac-
ceptable interference with government's ability to

govern. In *Perry,* Justice MOODY discussed four factors which indicated that the operation of a mental hospital was a governmental function: (1) the capacity of private mental hospitals available is insufficient to meet the substantial institutional needs of the public; (2) government plays a pervasive role in the area of mental health, including a substantial financial appropriation; (3) government has considerable direct responsibility for placing patients in mental hospitals through civil and criminal disposition of persons with serious mental diseases; and (4) the day-to-day care afforded patients in mental hospitals bears a uniquely governmental character since it furthers the public need to segregate, treat, and rehabilitate citizens suffering from mental diseases who cannot care for themselves and who are often committed voluntarily or involuntarily through government action.

Operation of the juvenile care facility here closely resembles operation of the mental hospital at issue in *Perry* and thus constitutes a governmental function. An affidavit submitted by the director of the Bureau of Regulatory Services of the Department of Social Services, relied upon by both plaintiff and defendants in the trial court, indicated in part:

"4. That there are 189 regulated (licensed non-governmental or approved governmental) child caring institutions in the State of Michigan for the care and custody of non-mentally retarded juvenile delinquent or neglected children.

"5. That the total maximum licensed or approved population for such institutions is 5,110 individuals.

"6. That 70 of such 189 regulated child caring institutions are operated by state or local governments, including the probate courts and that such institutions have a total licensed maximum population of 2,519 individuals.

"7. That 116 of such 189 child caring institutions are

non-governmental facilities and have a total maximum licensed population of 2,591 individuals."

Since nearly half of the total population of institutionalized delinquent or neglected children are in public facilities, it appears that the capacity of private facilities is insufficient to meet the needs of the public.

Government plays a pervasive role in the care of delinquent or neglected children. For recognition of the historical basis of this role, see *Hunt v Wayne Circuit Judges,* 142 Mich 93, 113; 105 NW 531 (1905). Examination of state appropriations for any recent year shows that government's role in this area has included the appropriation of substantial sums for the care of delinquent or neglected children. See, for example, 1979 PA 110, which contains appropriations for the Department of Social Services for the fiscal year ending September 30, 1980.

MCL 400.115; MSA 16.490(25) provides in part:

"Services to children and youth shall include: (a) Operating training schools, the children's institute, halfway houses, youth camps, diagnostic centers, state operated regional detention facilities, regional short-term treatment centers, group homes, and other facilities and programs established with the approval of the legislature to provide an effective program of out-of-home care for delinquent or neglected children committed to or placed in the care and custody of the department by probate courts or, where provided by law, the voluntary action of parents or guardians."

The statute demonstrates that government has considerable direct responsibility for placement of delinquent or neglected children in facilities such as Harbor House. Like the day-to-day care fur-

nished patients in mental hospitals, the day-to-day care furnished children in these facilities bears a uniquely governmental character. The statute recognizes a public need for a program of out-of-home care for delinquent and neglected children analogous to the public need to segregate, treat, and rehabilitate citizens suffering from mental disease discussed by Justice MOODY in *Perry*.

Plaintiff suggests that even if defendants were engaged in a governmental function by operating Harbor House, defendants were not engaged in a governmental function by conducting a swimming outing for Harbor House residents. We cannot agree. This is not a case like *Galli v Kirkeby*, 398 Mich 527; 248 NW2d 149 (1976), which involved a governmental agency whose normal operations were the exercise of a governmental function, but in which the specific tortious activity alleged bore no arguable relationship to the agency's function. Recreational activities such as a swimming outing are directly related to "an effective program of out-of-home care for delinquent or neglected children".

## II

Plaintiff also argues that, even if defendants were engaged in a governmental function, defendants were liable for intentional torts, and thus the trial court erred in granting summary judgment on Count III of her complaint. Count III in both actions alleged in relevant part:

"That at all times relevant herein, the defendant acted in a willful, wanton and reckless manner, and as a direct and proximate result of the defendant's willful, wanton and reckless behavior, the plaintiff's decedent died from drowning."

As plaintiff failed to allege an intentional act and did not allege that defendants had actual knowledge of the dangers and acted in intentional disregard of them, plaintiff failed to state a cause of action for an intentional tort. See *Hoeppner v Dep't of Labor,* 104 Mich App 334, 338-339; 304 NW2d 841 (1981).

### III

Plaintiff also argues that, even if the activities complained of amounted to the discharge of a governmental function, governmental immunity did not extend to defendants Nienow, Knox, and Hunt. No clear majority has yet emerged in the Supreme Court as to the proper test for determining when public employees are protected by governmental immunity. In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), Justice MOODY stated that public employees performing discretionary activities of essence to government were immune. Chief Justice COLEMAN agreed with Justice MOODY. Justice WILLIAMS stated that only *ultra vires* activities of public employees performing a governmental function are not protected by governmental immunity. Justices LEVIN, KAVANAGH, and FITZGERALD held that the complaint stated causes of action against the individual defendants, but did not explain their reasoning. Justice RYAN did not address the question.

Defendants argue that in *Lockaby v Wayne County,* 406 Mich 65, 84; 276 NW2d 1 (1979), a majority emerged for the position taken by Justice WILLIAMS in *Bush.* We cannot agree. In *Lockaby,* Justices LEVIN, KAVANAGH, and FITZGERALD declined to express an opinion on the liability of the

individual officials. Justice WILLIAMS restated his view that only *ultra vires* activities of public employees performing a governmental function are not protected by immunity. Chief Justice COLEMAN and Justice RYAN stated their agreement with the position taken by Justice MOODY. Justice MOODY stated:

"In addition, the officers and employees of the county, while acting within the scope of their employment maintaining a jail, primarily are performing essential public duties. Thus, they are immune from alleged negligent actions or selection of personnel. See *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979)."

Since the activities involved in *Lockaby* were arguably discretionary and since Justice MOODY expressly relied upon *Bush* in holding the officers and employees immune, it does not appear to us that Justice MOODY's *Lockaby* opinion was intended to alter the position he took in *Bush.* In the absence of any clear guidance from the Supreme Court on this question, this Court has taken the position that discretionary acts performed by a public employee in carrying out a governmental function are within the scope of immunity, while ministerial acts are not. See *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389, 397; 283 NW2d 749 (1979), *vacated on other grounds* 407 Mich 936 (1979), *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979), and *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980).

In *Antkiewicz,* this Court explained:

"The difference between discretionary and ministerial acts is one of degree. Discretionary acts are those of a legislative, executive, or judicial character. *Sherbutte v Marine City,* 374 Mich 48, 54; 130 NW2d 920 (1964),

*Armstrong v Ross Twp* [82 Mich App 77, 81; 266 NW2d 674 (1978)]. Such acts have been held to include disapproval of liquor bonds of private citizens, *Amperse v Winslow,* 75 Mich 234; 42 NW 823 (1889), and control over the operation of a particular law enforcement system, *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975).

"Ministerial acts are those where the public officer has little decision-making power during the course of performance; the officer's acts are primarily in response to orders. See Prosser [Torts (4th ed), § 132, p 990]. Prior Michigan decisions have deemed ministerial acts to include the issuance by a county drain commissioner of partial payments for a drain construction, *People, for Use of Lapeer County Bank v O'Connell,* 214 Mich 410; 183 NW 195 (1921); seizure of property for delinquent taxes, *Raynsford v Phelps,* 43 Mich 342; 5 NW 403 (1880); an arrest by a police officer, *Sherbutte v Marine City, supra;* and the denial of a building permit by a building inspector, *Armstrong v Ross Twp, supra.* The actions of members of the police and fire departments in conducting an arson investigation resemble the aforementioned acts previously determined by Michigan courts to be ministerial. These actions, therefore, are not covered by the protective cloak of governmental immunity."

Plaintiff's complaint in the circuit court action against defendants Nienow, Knox, and Hunt states the acts at issue here as follows:

"9. That the plaintiff's decedent's death was a direct and proximate result of the negligence of the defendants, which consisted of the following:

"a. In allowing the plaintiff's decedent to go to a swimming area and to participate in water activities, when he was unable to swim or was of marginal swimming ability;

"b. In generally failing to provide adequate care and supervision to the plaintiff's decedent during the course of the aforesaid swimming activities;

"c. In failing to have properly trained individuals in

the techniques of lifesaving and who were certified in life saving to supervise the plaintiff's decedent in respect to the swimming activities;

"d. In allowing the plaintiff's decedent to participate in swimming activities in a beach area where there were no lifeguards on duty;

"e. In taking the plaintiff's decedent to a swimming area where the weather and water conditions were not conducive to swimming activities;

"f. In allowing the plaintiff's decedent to swim outside of designated swimming areas;

"g. In generally failing to act as a reasonable and prudent persons would have acted under the same or similar circumstances.

"10. That in addition, defendant, Nienow, was negligent in failing to supervise defendants, Knox and Hunt, and in negligently failing to hire persons with suitable training and experience to provide the care, training and other services required for the plaintiff's decedent and other minor children who were residents of Harbor House."

MCL 400.115; MSA 16.490(25) directs the Department of Social Services to operate facilities such as Harbor House "to provide an effective program of out-of-home care for delinquent or neglected children". In our view, a decision that such a program should include swimming outings such as that at issue here is a discretionary act. However, plaintiff's complaint does not claim that the underlying policy decision to have swimming outings was negligent; rather, plaintiff charges negligence in the manner in which the particular swimming outing at issue here was conducted. The acts which plaintiff alleges to have been negligent are for the most part analogous to the ministerial acts discussed in *Antkiewicz.* We note, however, that the allegation contained in ¶ 10 of the complaint concerning defendant Nienow's exercise of his hiring powers involves discretionary acts. The

trial court's disposition of that allegation was correct.

The decision of the Court of Claims in the action against defendants State of Michigan and Department of Social Services is affirmed. The decision of the circuit court in the action against defendants Nienow, Knox, and Hunt is reversed except for the circuit court's disposition of the allegation in ¶ 10 of the complaint concerning defendant Nienow's exercise of his hiring powers. With respect to the disposition of that allegation, the circuit court is affirmed. The case is remanded for further proceedings not inconsistent with this opinion.