## LAYTON v QUINN

Docket No. 49902. Submitted May 4, 1982, at Detroit.—Decided November 2, 1982. Leave to appeal applied for.

Josephine Layton, administratrix of the estate of David Fregin, deceased, brought a wrongful death action against Dr. Leo Quinn, the Wayne County Board of Commissioners, Wayne County Sheriff William Lucas, Wayne County Jail Administrator Frank Wilkerson, and others in the Wayne Circuit Court. Plaintiff's decedent committed suicide while incarcerated in a disciplinary cell in the Wayne County Jail. Plaintiff alleged that the jail cell was not safe when used to incarcerate an inmate with mental problems and suicidal tendencies and that the sheriff and jail administrator were negligent in failing to safely maintain the jail, obey lawful court orders concerning the condition of the jail and its population, hire competent and diligent personnel, and properly and adequately train and adequately supervise jail personnel. The court, John M. Wise, J., granted accelerated judgment for the board of commissioners based on the constitutional provision that counties are not responsible for acts of the sheriff and accelerated judgment for the sheriff and the administrator, holding that plaintiff had only alleged vicarious liability for which governmental immunity is a defense. Plaintiff appealed. *Held:*

1. Plaintiff's complaint alleged liability on the part of the county individually or as a result of acts of county employees other than the sheriff. Accelerated judgment for the board of commissioners was improper.

2. Vicarious liability is based on principal-agent and master-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 150 *et seq.*

[2] 58 Am Jur 2d, Negligence § 464.

Imputation of contributory negligence of servant or agent to master or principal in action by master or principal against another servant or agent for negligence in connection with duties. 57 ALR3d 1226.

Imputation of servant's or agent's contributory negligence to master or principal. 53 ALR3d 664.

[3] 63 Am Jur 2d, Public Officers and Employees § 291.

servant relationships and involves the imputation of the negligence of the agent or servant to the principal or master without regard to the fault of the principal or master. Plaintiff's complaint against the sheriff and jail administrator alleged personal fault, not vicarious liability. Governmental immunity does not shield a public official from liability for acts outside the scope of his authority, including intentional torts, or for ministerial acts negligently done. Violation of lawful court orders by public officials is outside the scope of authority which gives rise to a defense of governmental immunity for negligent discretionary acts. Accelerated judgment for the sheriff and jail administrator in the allegations of failure to maintain a safe building and negligence in failing to observe lawful court orders was improper.

Affirmed in part and reversed in part. The action against the board of commissioners, sheriff, and jail administrator alleging failure to maintain a safe public building and the action against the sheriff and jail administrator alleging failure to observe lawful court orders are reinstated.

1. TORTS — GOVERNMENTAL TORT LIABILITY ACT — DEFECTIVE BUILDINGS.

   Whether a part of a public building is dangerous or defective for purposes of governmental immunity is to be determined in light of the uses or activities for which it is specifically assigned; a building may be safe for one use or purpose but not for another (MCL 691.1406; MSA 3.996[106]).

2. NEGLIGENCE — VICARIOUS LIABILITY.

   Vicarious liability is based on principal-agent and master-servant relationships and involves the imputation of negligence of an agent or servant to the principal or master without regard to the fault of the principal or master.

3. GOVERNMENTAL IMMUNITY — PUBLIC OFFICIALS — DISCRETIONARY-MINISTERIAL TEST.

   Governmental immunity does not shield a public official from liability for acts outside the scope of his authority, including intentional torts, or for ministerial acts negligently done; it does protect from liability for negligent discretionary acts.

4. GOVERNMENTAL IMMUNITY — PUBLIC OFFICIALS — VIOLATION OF COURT ORDERS — SCOPE OF AUTHORITY.

   Violation of lawful court orders by public officials is outside the scope of authority which gives rise to a defense of governmental immunity for negligent discretionary acts.

*Goodman, Eden, Millender & Bedrosian* (by *William H. Goodman*), for plaintiff.

*George H. Cross,* Corporation Counsel, and *Dean Koulouras,* Assistant Corporation Counsel, for defendants Wayne County Board of Commissioners, William Lucas, and Frank Wilkerson.

Before: M. J. KELLY, P.J., and T. M. BURNS and MACKENZIE, JJ.

M. J. KELLY, P.J. Plaintiff, Josephine Layton, appeals a grant of accelerated judgment, GCR 1963, 116, in favor of defendants Wayne County Board of Commissioners, William Lucas, the Wayne County Sheriff, and Frank Wilkerson, the Wayne County Jail Administrator.

On October 5, 1976, plaintiff administratrix commenced this wrongful death action to recover damages for the death of David Fregin. According to the complaint, Fregin was incarcerated in Wayne County Jail pending his arraignment on a felony charge. On his first day of incarceration, he unsuccessfully attempted suicide. Three days later, he again threatened to take his life and made another attempt. That night, he was seen by Dr. Leo Quinn, one of the jail's psychiatrists, who diagnosed the decedent as psychotic but not acutely suicidal. Fregin was transferred from the ward reserved for inmates with mental problems to a disciplinary cell. The cell was the farthest from the guard station and contained a toilet which was nonfunctional, contained fecal waste, paper, and other debris. Fregin was also denied exercise privileges and an opportunity to walk around outside his cell. Two days after being placed in the cell, Fregin committed suicide.

Prior to Fregin's incarceration, a three-judge

panel of the Wayne County Circuit Court had issued orders to the Wayne County Board of Commissioners (commissioners), the sheriff, and the jail administrator concerning the admission, custody, care, and treatment of inmates incarcerated in the jail. This order was affirmed by the Michigan Supreme Court. See *Wayne County Jail Inmates v Wayne County Sheriff,* 391 Mich 359; 216 NW2d 910 (1974). After Fregin's death, an investigation of his suicide was conducted by the three-judge panel of the Wayne County Circuit Court. The panel found that the commissioners, sheriff, and jail administrator had violated a number of the court's orders. On November 25, 1975, the panel issued an opinion cataloging the derelictions which led to Fregin's hanging himself with a sheet and excoriated the jail authorities for "multiple violations" of the panel's previous orders. Plaintiff's complaint in the instant action filed 11 months after the three-judge court issued its above reference opinion alleged 20 violations of court orders imposing specific duties on defendants Sheriff Lucas and Administrator Wilkins. We hold that plaintiff has presented a question of factual determination and reverse the grant of accelerated judgment.

The commissioners, sheriff, and jail administrator moved for accelerated judgment, claiming governmental immunity barred plaintiff's action. On July 14, 1977, the trial court granted defendants' motion. Plaintiff moved for reconsideration of the court's order following the Supreme Court's decisions in *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), and *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). The trial court denied plaintiff's motion. Plaintiff sought leave to appeal to this Court, GCR 1963,

806.2, which was granted. On January 8, 1982, this Court denied defendants sheriff's and jail administrator's motion to dismiss.

On appeal, plaintiff argues that the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106), prevented defendants from raising the defense of governmental immunity. Defendants counter by arguing that plaintiff failed to allege specific facts which would avoid governmental immunity.

MCL 691.1407; MSA 3.996(107) grants immunity from tort liability to governmental agencies which are engaged in the exercise or discharge of a governmental function. The operation of a jail is a governmental function for which the county is immune. *Lockaby, supra,* pp 79, 83, 84. However, an exception to this rule exists if the jail was a defective public building. MCL 691.1406; MSA 3.996(106). The statute states in relevant part:

"Government agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damages resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

Whether a public building is dangerous or defective is to be determined in light of the uses or activities for which it is specifically assigned. *Lockaby, supra,* p 77; *Bush, supra,* p 731. When determining whether a place is safe, we must consider the use or purpose it serves. *Bush, supra,* p 731. In *Lockaby,* the question addressed was whether a

cell in Wayne County Jail was safe for imprisoning an inmate with mental problems.

In this case, plaintiff's complaint alleges that the jail cell, in which Fregin committed suicide, was not safe when used to incarcerate an inmate with mental problems and suicidal tendencies. As in *Lockaby, supra,* this allegation was sufficient to avoid accelerated judgment based upon governmental immunity. Whether the cell was defective when used to confine Fregin is a question for the trier of fact as is the question of whether the defect was a cause of his death. See *Bush, supra,* p 732.

When granting accelerated judgment to the county, the trial judge relied also upon Const 1963, art 7, § 6, which provides that the county is not responsible for the acts of the sheriff. However, the county may be liable individually or for the acts of its other employees. The plaintiff's complaint has alleged liability on the part of the county individually and not just from the county's responsibility for the sheriff's actions. Therefore, it was improper to grant accelerated judgment in favor of defendants Wayne County Board of Commissioners, Sheriff, and Jail Administrator on these grounds.

In addition, accelerated judgment was granted to the sheriff and the jail administrator because the trial court found that plaintiff's complaint alleged only vicarious liability and that governmental immunity shielded the sheriff and the jail administrator from such liability. In her complaint, however, plaintiff alleged:

"Despite the duty owed the plaintiff's decedent, the defendants Lucas and Wilkerson were negligent in the following respects, among others:
"a) Failure to observe lawful court orders concerning

the condition of the Wayne County Jail and its population;

"b) Failure to hire competent and diligent personnel;

"c) Failure to properly and adequately train jail personnel;

"d) Failure to properly and adequately supervise jail personnel."

The circuit judge erred in stating that the foregoing were allegations of vicarious liability. Vicarious liability is based on principal-agent and master-servant relationships and involves the imputation of the negligence of the agent or servant to the principal or master without regard to the fault of the principal or master. Plaintiff's complaint, however, alleged personal fault on the part of the sheriff and the jail administrator rather than any vicarious liability.

Nevertheless, plaintiff's allegations of negligence may still be within the limited scope of immunity granted to governmental employees. The scope of governmental immunity for governmental employees under Michigan law is a topic of wide debate. A number of decisions of this Court have begun to freely apply governmental immunity whenever a governmental employee is "acting within the scope of his employment". See, e.g, *Lewis v Beecher School System,* 118 Mich App 105; 324 NW2d 779 (1982); *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981) (a 2-1 decision). Other decisions have continued to limit the scope of immunity for governmental employees by applying a ministerial-discretionary distinction for acts committed within the scope of employment. See, e.g., *Willis v Nienow,* 113 Mich App 30; 317 NW2d 273 (1982); *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979) (a 2-1 decision). These latter cases hold that while discretionary acts committed within the scope of a

governmental employee's proper authority are accorded immunity, ministerial acts and those committed outside of the employee's authority are not.

The ministerial-discretionary standard for according immunity to governmental employees has its roots in early Michigan common law. See *Gordon v Farrar*, 2 Doug 411 (Mich, 1847); *Wall v Trumbull*, 16 Mich 228, 236 (1867) ("it is the nature of the duties to be performed that determines its application"). Under these early decisions, a governmental officer acting in a decision-making or judicial role and not acting outside of his authority is cloaked with immunity from liability.

In 1961, an eight-member Supreme Court threatened to abolish all governmental immunity. In *Williams v Detroit*, 364 Mich 231; 111 NW2d 1 (1961), the Court reached a standoff (4-4) on whether the complete doctrine should be abolished. Indeed, Justice EDWARDS, with three other justices in support, wrote:

"From this date forward the judicial doctrine of governmental immunity from ordinary torts no longer exists in Michigan. In this case, we overrule preceding court-made law to the contrary. We eliminate from the case law of Michigan an ancient rule inherited from the days of absolute monarchy which has been productive of great injustice in our courts. By so doing, we join a major trend in this country toward the righting of an age-old wrong." *Williams, supra,* p 250.

The swing opinion in the case, written by Justice BLACK, affirmed state governmental immunity but implied that municipal immunity should prospectively be cast aside. *Williams, supra,* pp 270-290. Three months later, the Supreme Court made it clear that the *Williams* decision "had overruled,

prospectively, the rule of immunity—from tort liability—of *municipal corporations;* no more and no less". *McDowell v State Highway Comm'r,* 365 Mich 268, 269; 112 NW2d 491 (1961) (emphasis in original).

The Legislature was not content with the prospect of losing governmental immunity. Thus, it soon passed a governmental immunity act, 1964 PA 170 (effective July 1, 1965), retaining immunity for "the state, political subdivisions, and municipal corporations". See MCL 691.1401(d); MSA 3.996(101)(d). Section 7 of the act specifically provided:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein said government agency *is* engaged *in* the exercise and discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed." MCL 691.1407; MSA 3.996(107).

The language of this section demonstrates a legislative attempt *to* codify common-law governmental immunity, in order to prevent the judiciary from abolishing or "modifying or restricting" the doctrine from its common-law form.

In spite of this legislation, governmental immunity remained under attack. In 1966, a panel of this Court stated, "[i]t is clear that the public policy of Michigan is that the defense of governmental immunity to tort actions should no longer exist." *Branum v Bd of Regents of University of Michigan,* 5 Mich App 134, 138; 145 NW2d 860 (1966). Then, in 1969, this Court declared the legislative codification of governmental immunity

to be unconstitutional, solely because it embraced "an object not expressed in its title". *Maki v City of East Tawas,* 18 Mich App 109, 120; 170 NW2d 530 (1969) (a 2-1 decision applying Const 1963, art 4, § 24), *aff'd* 385 Mich 151; 188 NW2d 593 (1971). Back at the Capitol, however, the Legislature quickly passed 1970 PA 155, which corrected the title-object deficiency of the original act rather than its substance. See MCL 691.1401-691.1415; MSA 3.996(101)-3.996(115). This revised act was given immediate effect. Thus, after various blows between the courts and the Legislature, governmental immunity was virtually unchanged. Common-law governmental immunity still remained for all but municipalities and statutory governmental immunity preserved governmental immunity as it existed at common law, including its extension to municipalities.

In November, 1976, the Supreme Court decided three cases on governmental immunity. In *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), the Court addressed whether the construction of a state highway was a governmental function. For purposes of the instant discussion, however, the Court made an important statement: that the Legislature's codification of governmental immunity "must be construed as an 'affirmation' of case-law precedent on the subject of the state's immunity". *Thomas, supra,* p 11. Thus, since prior case-law precedent extended immunity to state officials only when they acted within a "judicial" or "discretionary" capacity and not outside of their proper authority, the governmental immunity statute must be construed as encompassing this limitation as well.

Decided on the same day as *Thomas,* was *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512

(1976). There, the Court was faced with a unique factual setting. On April 24, 1969, the plaintiff was injured due in part to the alleged negligence of the Taylor Board of Education. The board asserted the defense of governmental immunity. The Supreme Court decided in *Pittman,* however, to abolish common-law governmental immunity. Since the Legislature's 1964 attempt to codify governmental immunity was previously deemed unconstitutional, the Court found that statutory governmental immunity did not exist until 1970, the date the revised immunity statute was passed. Since plaintiff's accident occurred in 1969, and statutory immunity did not exist until 1970, the defendant board was found to be without immunity to plaintiff's suit. Given the unusual factual setting in *Pittman,* where an accident occurred in 1969 and the question of immunity was not finally adjudicated until 1976, the abolition of common-law governmental immunity may have affected only the parties in the *Pittman* case. Any injury occurring after 1970 would be covered by the immunity statute which, as noted in *Thomas,* is an affirmation of the common law.

Finally, that same day, the Court decided *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976). There, in separate opinions, a majority of the Court agreed that an intentional tort was not in the exercise or discharge of a governmental function, was outside the proper scope of employment, and was not, therefore, protected by governmental immunity.

Three years later, in *Bush, supra,* the Court was faced with a suit brought against a teacher, a school principal, a school district superintendent, and a school district. The Court issued four separate opinions. In discussing the possible liability of

the three individuals, three justices, LEVIN, KAV-
ANAGH, and FITZGERALD, simply stated, "[t]he com-
plaint did state claims against the three individual
defendants." *Bush, supra,* p 733. No analysis was
given. Justice MOODY found that the three individ-
ual defendants "were performing primarily discre-
tionary activities" and, therefore, were immune
from negligence liability. Justice WILLIAMS wrote
that only the *ultra vires* activities of public em-
ployees are not protected by governmental immu-
nity. Justice RYAN wrote "[t]he threshold consider-
ation in determining * * * governmental immu-
nity defense" is whether defendant "and its em-
ployees were engaged in the exercise or discharge
of a govermental function". He conceded, however,
that the Legislature intended "that this Court look
to the common law for guidance in determining
whether governmental immunity was applicable in
each case". *Bush, supra,* pp 734, 735. He found no
liability on the part of the individual defendants
but did not discuss the ministerial-discretionary
standard. Justice COLEMAN concurred with Jus-
tices MOODY and RYAN. Out of the four opinions of
the seven justices, only Justice WILLIAMS clearly
abandoned the ministerial-discretionary test.

The following month, the Court decided *Lock-
aby, supra.* Justices LEVIN, KAVANAGH, and FITZ-
GERALD made no decision on immunity of govern-
mental employees. They stated:

"While the governmental tort liability act does not
provide any immunity to governmental officials, the
common law has recognized that governmental officials
have a limited immunity. The cause has not been tried;
decision on whether there is immunity should be de-
ferred." *Lockaby, supra,* p 78.

Justice COLEMAN found plaintiff's allegations

"make out a possible case of intentionally tortious acts committed by agents of the defendants, thus potentially not within 'the exercise or discharge of a governmental function'". *Lockaby, supra,* p 78. On plaintiff's negligence allegations, however, Justice COLEMAN stated, "the county's officers and employees, while acting in the scope of their employment operating and maintaining a jail, are likewise immune". *Lockaby, supra,* p 79. It appears, therefore, that Justice COLEMAN, without expressly stating such, may have abandoned the ministerial-discretionary distinction for acts committed within the scope of a governmental employee's functions. Justice RYAN concurred with Justice COLEMAN. Justice WILLIAMS reiterated that "it is the *ultra vires* activities of public employees which are not protected by the doctrine of governmental immunity". *Lockaby, supra,* p 83. Finally, Justice MOODY, who a month earlier had based a governmental immunity decision on the ministerial-discretionary distinction, stated, "the officers and employees of the county, while acting within the scope of their employment maintaining a jail, primarily are performing essential public duties. Thus, they are immune from alleged negligent actions or selection of personnel." *Lockaby, supra,* p 84. What Justice MOODY meant by this language is not clear.

Whatever can be read from *Bush* and *Lockaby,* one fact must be conceded: the Supreme Court did not expressly abolish the ministerial-discretionary test for determining whether governmental immunity applies to governmental officials who may have been negligent in the performance of their duties.

Established rules of law are not generally abandoned merely by implication. See *People v Stoeckl,*

347 Mich 1, 16; 78 NW2d 640 (1956). Thus, we decline to follow the errant path of some panels of this Court which have abandoned the ministerial-discretionary test. The abolition of the standard would result in an unwarranted expansion of governmental immunity. Such an expansion should not be predicated merely on what a panel predicts "four members of the Supreme Court would now hold". Contra, *Lewis, supra,* p 111.

If a public official acts outside the scope of his authority *(ultra vires),* immunity does not apply. If he commits an intentional tort, immunity does not apply as the act is *ultra vires.* If he is negligent in a ministerial role, immunity does not apply. If, however, a decision-making official is negligent in making a decision or exercising discretion, governmental immunity protects him from liability.

In the instant case, plaintiff's allegations that defendants were negligent in their hiring, training, and supervision of jail personnel are allegations of misconduct in defendants' decision-making roles. How to properly hire, train, and supervise employees involves the exercise of discretion. Since these acts involve areas within defendants' authority, governmental immunity protects defendants from liability from any negligent actions.

Plaintiff alleged further, however, that defendants were negligent in their "failure to observe lawful court orders concerning the condition of Wayne County Jail and its population". These court orders were so explicit and left so little to the discretion of the sheriff and jail administrator that the duties of those officials under the orders must be classified as ministerial. Thus, any negligence by the defendants in failing to comply with the orders must be deemed outside the protection of governmental immunity. Further, violation of

legally binding court orders would be outside the scope of defendants' authority. Thus, their actions would be *ultra vires.* Governmental immunity does not extend to the *ultra vires* acts of any employee, whether committed in a ministerial or discretionary role. Plaintiff's negligence action against the sheriff and the jail administrator under clause (a) of her complaint, therefore, is not barred by governmental immunity.

Plaintiff's action against the commissioners, sheriff, and jail administrator alleging that they failed to maintain a safe public building is reinstated. Plaintiff's action against the sheriff and jail administrator alleging that they were negligent in failing to observe lawful court orders is reinstated. The trial court's grant of accelerated judgment as to the remaining negligence counts against the sheriff and jail administrator is affirmed.