CONVERSE v ISABELLA COUNTY

Docket Nos. 64854, 64855. Submitted April 11, 1983, at Lansing.—
Decided June 7, 1983.

Rodney L. Converse was injured in an automobile accident in
Isabella County when the car he was driving was struck at an
intersection by another car. The other car, driven by Joseph
Woodrow, was supposed to stop at the intersection. Woodrow
failed to stop at the intersection because the stop sign which
was supposed to be posted at the intersection was missing. It
had been knocked down a week earlier by another automobile,
driven by David A. Bohannon, and had never been replaced.
Converse filed suit against Isabella County and the Isabella
County Board of Road Commissioners in Isabella Circuit Court
alleging that the county and the board had a duty to maintain
highways under their jurisdiction in a safe condition and that
they knew about the absence of the stop sign but failed to
replace it. The county and the board then filed a third-party
complaint against the State of Michigan, the Department of
State Police and two state troopers alleging that the earlier
accident, in which the sign had been knocked down, had been
investigated by the two troopers and that they had not repaired
the sign or notified the proper authorities about its condition.
The county and board sought contribution and indemnity on
the basis that the negligence of the troopers had been the
proximate cause of the second accident. The third-party com-
plaint also added David A. Bohannon and Donald Woodrow, the
administrator of the estate of Joseph Woodrow, as third-party
defendants. The county and the board then filed suit against
the state in the Court of Claims. The allegations in the Court of
Claims complaint and the defendants named were the same as
in the third-party complaint in the circuit court action. Con-
verse moved to sever his claim from the third-party claims of

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 104 et seq., 341,
343 et seq.
57 Am Jur 2d, Municipal, School, and State Tort Liability § 86.
72 Am Jur 2d, States, Territories, and Dependencies § 99 et seq.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 88.

the county and the board. The motion was granted, Paul F. O'Connell, J. The third-party action and the Court of Claims action were then consolidated but retained separate docket numbers. The state, the state police and the two troopers moved for summary judgment in the Court of Claims on, *inter alia,* the ground that a claim for contribution or indemnity is barred by governmental immunity. Amended third-party complaints were filed in both the circuit court and the Court of Claims adding two more state troopers, Philip Frey and John Bassett, as defendants. Two motions were made by the county and the board, one for reconsideration and one for summary judgment. Following a hearing, the Isabella Circuit Court, Paul F. O'Connell, J., rejected the motions of the county and board but granted the defendants' motion for summary judgment, ruling that governmental immunity bars a claim for contribution against the state or the state police and that the individual troopers were protected by governmental immunity because they were acting in the course of their employment at the time their allegedly negligent acts occurred. The county and the board filed two appeals, one concerning the order dismissing the action against the individual third-party defendants and the other concerning the order dismissing the claim against the State of Michigan and the Department of State Police. The two appeals have been consolidated. *Held:*

1. The trial court properly dismissed the third-party claim against the State of Michigan and the Department of State Police. Governmental immunity bars the third-party action for contribution.

2. The trial court did not err in holding that the individual troopers were immune to the third-party claims against them. The scope of employment standard is the correct test to apply to determine whether government employees are immune from tort actions. It is not disputed that the individual troopers were acting within the scope of their employment when the allegedly tortious acts occurred. Therefore, the troopers are entitled to immunity in the third-party action and it is unnecessary to determine whether the alleged tortious acts were ministerial or discretionary.

Affirmed.

1. Actions — Highways — Third-Party Practice — Contribution — Governmental Immunity.

The statute which creates an exception to the governmental immunity statute based upon a political subdivision's failure to maintain highways within its jurisdiction in reasonable repair,

safe and fit for travel, allows only that class of persons who suffer bodily injury or property damage to bring suit; the statute does not allow the defendant in such a suit to bring an action for contribution against the State of Michigan or any other governmental agency (MCL 691.1401, 691.1402; MSA 3.996[101], 3.996[102]).

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — SCOPE OF EMPLOYMENT.

The proper standard to apply to determine whether governmental employees are entitled to governmental immunity in tort actions is whether the employees were acting within the scope of their employment at the time the allegedly tortious acts occurred.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, Criminal Division, for the State of Michigan, Department of State Police, Frank Best, Richard Demerse, Philip Frey and John Bassett.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for Isabella County and Board of Road Commissioners of Isabella County.

Before: DANHOF, C.J., and ALLEN and D. F. WALSH, JJ.

ALLEN, J. Isabella County and the Isabella County Board of Road Commissioners, as third-party plaintiffs, appeal as of right from two judgments of dismissal entered on April 13, 1982, in favor of third-party defendants the State of Michigan, Department of State Police and four state police officers. The appeal, which comes to us on a somewhat complicated statement of facts, raises two issues of governmental immunity, on each of which this Court has reached conflicting conclusions.

On January 7, 1977, plaintiff Rodney Lee Con-

verse was driving his car south on South Wise Road approaching the intersection of South Wise Road and East Coe Road. At the same time, Joseph Woodrow was driving west on East Coe Road approaching its intersection with South Wise Road. South Wise Road is a through road and East Coe Road is a stop road, with a stop sign warning motorists on East Coe to stop. The Woodrow car failed to stop, entered the intersection and struck the Converse vehicle. As a result of the collision, Rodney Converse sustained serious injuries and Joseph Woodrow was killed. The reason Woodrow drove into the intersection without stopping was that the stop sign had been knocked down on January 1, 1977, when it was struck by an automobile driven by David Allen Bohannon, a third-party defendant. The Bohannon accident was investigated by Michigan State Police troopers Best, Demerse, Frey and Basset, the four individuals named as third-party defendants. Allegedly, neither the department nor any of the four officers repaired the sign or notified Isabella or the board that the sign had been knocked down.

On April 14, 1978, suit was filed in the Isabella Circuit Court on behalf of Rodney Lee Converse against Isabella and the board. Neither the State of Michigan, the State Police nor the individual troopers were named as defendants. Basically, the complaint alleged that defendants had a duty to maintain highways under their jurisdiction in a safe condition and that defendants knew about the absence of the stop sign but did nothing about it. On April 7, 1980, Isabella and the board, as third-party plaintiffs, filed a third-party complaint naming the State of Michigan, the Department of State Police and two of its officers as defendants. The complaint alleged that the Bohannon accident had

been investigated by state troopers Best and Demerse, who failed to repair the sign or notify the proper authorities about its condition. Their actions or lack of action was claimed to constitute negligence which was the proximate cause of the accident. Because of that alleged negligence, both contribution and indemnity were claimed to be owing third-party plaintiffs, Isabella and the board. Additionally, the complaint added Bohannon and Donald Woodrow, administrator of the estate of Joseph Woodrow, the driver and owner of the automobile which struck Rodney Converse. In August, 1980, Isabella and the board filed a complaint in the Court of Claims. The allegations in that complaint and the parties defendant were the same as in the suit filed in circuit court.

On September 15, 1980, the principal plaintiff, Rodney Converse, moved to sever his claim from the claims of Isabella and the board in their action against the third-party defendants. That motion was granted and an order entered on January 21, 1981. Subsequently, by virtue of a stipulation between the parties, the actions then pending in the circuit court and in the Court of Claims were consolidated. The separate actions retained their different docket numbers and headings, but for motions and related matters were treated as though they were one case.

After the cases were consolidated, a motion for summary judgment was filed in the Court of Claims on behalf of the state, the department and the two individual officers. The motion was based on grounds, *inter alia,* that a claim for contribution or indemnity is barred by governmental immunity. Then, on October 16, 1981, amended third-party complaints were filed in the circuit court and Court of Claims. The amended complaints

added troopers Philip Frey and John Basset as defendants, but otherwise were similar to the complaints previously filed. Third-party plaintiffs then filed two motions, one for reconsideration of the decision to sever and one for summary judgment, and on April 13, 1983, a hearing was held on the three pending motions.[1]

Following the hearing, the trial court rejected the third-party plaintiffs' motions for reconsideration and for summary judgment but granted third-party defendants' motion for summary judgment. The court ruled that governmental immunity bars a claim for contribution against the State of Michigan or the department. As to troopers Best, Demerse, Frey and Basset, the judge ruled that they were acting in the course of their employment with the department at the time the allegedly negligent acts took place and that, consequently, the troopers were protected from suit by governmental immunity.

The third-party plaintiffs subsequently filed two claims of appeal from the circuit court order granting summary judgment to the third-party defendants. One claim of appeal (No. 64854) concerns the order dismissing the action against the individual third-party defendants, while the other claim of appeal (No. 64855) concerns the order dismissing the claim against the State of Michigan and the Department of State Police. By order of this Court dated August 6, 1982, the two appeals were consolidated. Each appeal raises a separate issue of governmental immunity. We discuss the appeals in inverse order. Not involved in this

---

[1] At the April 13, 1982, hearing, three motions were pending: (1) third-party plaintiffs' motion for reconsideration of the decision to sever; (2) third-party plaintiffs' motion for summary judgment against the four named police officers; and (3) third-party defendants' motion for summary judgment against third-party plaintiffs.

appeal is Rodney Converse's suit against Isabella and the board or the propriety of the trial court's grant of the motion to sever the Converse claim from third-party plaintiffs' action.

I

In appeal No. 64855, the issue posed is whether governmental immunity bars the third-party plaintiffs' action for contribution against the state and the department. The key words are *"action for contribution"*.

To the general grant of immunity conferred upon the state and its political subdivisions by 1970 PA 155; MCL 691.1401; MSA 3.996(101), the Legislature carved out certain exceptions. One exception is for tort liability arising from the failure of the political subdivision which has control over the highways to keep the highways safe and fit for travel. MCL 691.1402; MSA 3.996(102). Assuming, *arguendo,* that the state had jurisdiction over East Coe Road and South Wise Road and that the roads were unsafe because of the state's failure to properly maintain the roads, MCL 691.1402; MSA 3.996(102) allows the principal plaintiff to sue the State of Michigan directly for failure to maintain a state highway. However, there is a split of opinion among several panels of this Court as to whether MCL 691.1402; MSA 3.996(102) allows a contribution action against the state or a government agency. Two panels of this Court have ruled that MCL 691.1402; MSA 3.996(102) does not allow a contribution action against the state or other governmental agency. *Sziber v Stout,* 111 Mich App 450; 315 NW2d 166 (1981), *lv gtd* 414 Mich 864 (1982); *Genesee County Road Comm v State Highway Comm,* 86 Mich App 294; 272 NW2d 632 (1978). *May v Wolverine Trac-*

*tor & Equipment Co,* 107 Mich App 163; 309
NW2d 594 (1981), *lv gtd* 412 Mich 863 (1982)
(appeal dismissed on October 15, 1982, upon stipu-
lation by the attorneys), reached the opposite con-
clusion.

In *Genesee County Road Comm,* a wrongful
death action was commenced in circuit court
against both the county road commission and the
state. Accelerated judgment was granted in favor
of the state on grounds that jurisdiction against
the state lay exclusively in the Court of Claims.
The Court of Claims action was later dismissed
and the county settled the circuit court action.
Thereafter, the county road commission sought
contribution from the State Highway Commission.
The Court of Claims granted summary judgment
in favor of the state. On appeal, this Court af-
firmed saying:

"Although this section [MCL 691.1402; MSA
3.996(102)] would have permitted the action in behalf of
Michael Mitchell to be pursued against the state, it
does not authorize the sort of action attempted here.
This is because the statute limits relief to that class of
persons who suffer bodily injury or property damage.
Plaintiffs, of course, have suffered no such loss. Statu-
tory exceptions to governmental immunity are to be
strictly construed. *Stremler v Dep't of State Highways,*
58 Mich App 620, 632-633; 228 NW2d 492 (1975). Subse-
quent language in MCL 691.1402; MSA 3.996(102), lim-
iting actions to 'injury or loss suffered on or after July
1, 1965,' should not be read to expand the class of
person who could bring a suit against the state. Rather,
this language merely refers to the bodily injury and
property damage mentioned previously therein." 86
Mich App 294, 298-299.

*May v Wolverine Tractor & Equipment, supra,*
rejected the analysis of *Genesee County Road*

*Comm,* concluding that the waiver of governmental immunity in MCL 691.1402; MSA 3.996(102) permitted the state or its agencies to be impleaded by a defendant who is not injured and who suffered no property damage as a direct result of the accident. *May* reasoned that MCL 691.1402-691.1406; MSA 3.996(102)-3.996(106) evidences a legislative intent to protect the public from injury by imposing upon governmental agencies the duty to maintain safe public places and that this purpose would be advanced by imposing liability upon governmental units via contribution. The panel in *May* believed that this approach would avoid situations where a plaintiff, through lack of diligence or deliberate choice, failed to sue a governmental defendant and thereby placed upon a named defendant an unfair share of responsibility.

The Court in *Sziber, supra,* with Judge (now Justice) CAVANAGH dissenting, agreed with the rationale behind the decision in *Genesee County Road Comm,* finding that where a statute, such as MCL 691.1402; MSA 3.996(102), creates liability in derogation of common law, it must be strictly construed, and that, by its plain language, the section permits a suit to be brought against a governmental unit only by that class of persons who have sustained bodily injury or damage to their property as a result of that governmental agency's failure to keep a highway in reasonable repair. *Sziber, supra,* pp 457-458. In addressing the concerns of the *May* panel, the *Sziber* majority stated:

"We acknowledge that our interpretation of MCL 691.1402; MSA 3.996(102) could, conceivably, lead to situations where a plaintiff (through lack of diligence or oversight in not naming a governmental defendant) might place upon a named defendant a greater share of

responsibility than might otherwise have resulted had the governmental agency been joined. Also, we agree with the *May* Court that the exception to governmental immunity found in MCL 691.1402; MSA 3.996(102) evidences a legislative intent to protect the public from injury by imposing upon governmental agencies the duty to maintain safe public places. However, we also believe that a strong argument could be made that that purpose would only be marginally advanced by allowing contribution actions to be brought by a party who has not actually suffered 'bodily injury or damage to his property' as a result of a governmental unit's failure to maintain reasonably safe highways. Be that as it may, we believe it is for the Legislature to determine the scope of the waiver of governmental immunity and we will not expand the class entitled to relief pursuant to MCL 691.1402; MSA 3.996(102)." 111 Mich App 458.

We agree with *Genesee County Road Comm* and *Sziber.* The rule at common law was that the government could not be sued in tort directly or through contribution action. Following the judicial attack on the governmental immunity doctrine, *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), the Legislature passed the governmental immunity statute. See *Layton v Quinn,* 120 Mich App 708; 328 NW2d 95 (1982). The governmental immunity statute demonstrates the legislative intent to codify common-law governmental immunity in order to prevent the judiciary from abolishing or "modifying or restricting" the doctrine from its common-law form. *Layton, supra.* It is for the Legislature to expand the class entitled to relief under MCL 691.1402; MSA 3.996(102). *Sziber, supra,* p 458. Accordingly, the trial court properly dismissed the third-party claim against the State of Michigan and the Department of State Police based on the unsafe highway exception to governmental immunity.

## II

The claim of appeal in Docket No. 64854 concerns the trial court's order dismissing the action against the four named individual third-party defendants. The trial court granted summary judgment on grounds that the acts done or not done by the officers were done in the course of their employment and that, consequently, governmental immunity applied to those actions. In arriving at that conclusion, the trial court concluded that it was immaterial whether the actions were discretionary or ministerial. Third-party plaintiffs argue that, in ignoring the ministerial-discretionary test, the trial court erred. Third-party defendants argue that a majority of the Supreme Court has now adopted the scope of employment test under which immunity applies as long as the individuals involved were acting in the course of their employment.

Although it is clear from Supreme Court opinions in *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), and *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), that government employees can be immune from tort actions, it remains unclear under what standard or test immunity is found to exist. Justice MOODY's death compounds the problem. The obfuscation is best described in *Willis v Nienow,* 113 Mich App 30, 38-39; 317 NW2d 273 (1982), where we said:

"No clear majority has yet emerged in the Supreme Court as to the proper test for determining when public employees are protected by governmental immunity. In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), Justice MOODY stated that public employees performing discretionary activities of essence to government were immune. Chief Justice COLEMAN agreed with

Justice Moody. Justice Williams stated that only *ultra vires* activities of public employees performing a governmental function are not protected by governmental immunity. Justices Levin, Kavanagh, and Fitzgerald held that the complaint stated causes of action against the individual defendants, but did not explain their reasoning. Justice Ryan did not address the question.

"Defendants argue that in *Lockaby v Wayne County*, 406 Mich 65, 84; 276 NW2d 1 (1979), a majority emerged for the position taken by Justice Williams in *Bush*. We cannot agree. In *Lockaby*, Justices Levin, Kavanagh, and Fitzgerald declined to express an opinion on the liability of the individual officials. Justice Williams restated his view that only *ultra vires* activities of public employees performing a governmental function are not protected by immunity. Chief Justice Coleman and Justice Ryan stated their agreement with the position taken by Justice Moody. Justice Moody stated:

"'In addition, the officers and employees of the county, while acting within the scope of their employment maintaining a jail, primarily are performing essential public duties. Thus, they are immune from alleged negligent actions or selection of personnel.'"

The *Willis* Court then concluded that "[i]n the absence of any clear guidance from the Supreme Court on this question, this Court has taken the position that discretionary acts performed by a public employee in carrying out a governmental function are within the scope of immunity, while ministerial acts are not". Other panels of this Court have agreed. *Layton v Quinn, supra; Fuhrmann v Hattaway,* 109 Mich App 429, 435-437; 311 NW2d 379 (1981); *Fiser v Ann Arbor,* 107 Mich App 367, 371; 309 NW2d 552 (1981), *lv gtd* 412 Mich 915 (1982); *O'Toole v Fortino,* 97 Mich App 797, 811; 295 NW2d 867 (1980), *lv den* 410 Mich 863 (1980).

On the other hand, a growing number and more recent decisions of this Court have rejected the

ministerial-discretionary acts test and have adopted the within the scope of employment test.[2] *Cook v Bennett,* 94 Mich App 93, 101-102; 288 NW2d 609 (1979); *Everhart v Roseville Bd of Ed,* 108 Mich App 218, 222-223; 310 NW2d 338 (1981); *Gaston v Becker,* 111 Mich App 692, 697-699; 314 NW2d 728 (1981); *Lewis v Beecher School System,* 118 Mich App 105; 324 NW2d 779 (1982).

This panel finds the reasoning in *Lewis* to represent the better view. There a unanimous panel concluded:

"In our view, four members of the Supreme Court would now hold that an employee who is acting within the scope of his employment is immune from suit. Therefore, we part company from other panels of this Court which continue to adhere to the discretionary-ministerial test. * * * Since plaintiff's allegations clearly claim that Lamppa was negligent in the performance of his duties as a teacher, the trial court correctly dismissed plaintiff's complaint." *Lewis,* p 111. (Citations omitted.)

Third-party plaintiffs do not dispute that the troopers were acting within the scope of their employment when the allegedly tortious acts occurred. Therefore, under the scope of employment test, the troopers are immune from the third-party action and it is unnecessary to determine whether the alleged tortious acts were ministerial or discretionary. Accordingly, we conclude that the trial court did not err in holding that the individual officers were immune from the third-party claims against them.

Affirmed. No costs, a question of public interest being involved.

---

[2] Although Judge WALSH was formerly of the opinion that the ministerial-discretionary test enjoyed continued viability, he is now persuaded to the contrary and joins in the conclusion that the scope of employment test must be applied.