BRAND v HARTMAN

Docket No. 52219. Submitted February 17, 1982, at Detroit.—Decided
January 10, 1983.

Plaintiff-appellee, Ronald Brand, brought a suit in the Wayne
Circuit Court against defendant-appellees, Fred and Ruth Hart-
man and Real Estate One, Inc., seeking damages arising from a
purchase of a house by the plaintiff. Plaintiff thereafter
amended his complaint to add defendant-appellant, the City of
Detroit, as a defendant on the theory that it negligently exam-
ined the house and issued a certificate of approval which failed
to list the building's defects. Defendant-appellant's motion for a
summary judgment, based on a claim of governmental immu-
nity, was thereafter denied by the trial court, Harold M. Ryan,
J. The Court of Appeals granted an application for leave to
appeal from the interlocutory order denying the motion for
summary judgment. Defendant-appellant appeals raising issues
pertaining to the claim of governmental immunity and the trial
court's allowance of the filing of a second amended complaint
after defendant-appellant filed for leave to appeal. *Held:*

1. The inspections done pursuant to the city's ordinance and
the certificates of approval issued pursuant thereto are not of
essence to governing. Such activity is nongovernmental.

2. The trial court did not err in determining that the negli-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 85.
Liability of municipal corporation for negligent performance of
building inspector's duties. 41 ALR3d 567.
[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 310.
[4] 61A Am Jur 2d, Pleading § 307.
[5] 61A Am Jur 2d, Pleading § 230 *et seq.*
[6] 29 Am Jur 2d, Evidence § 123.
  61A Am Jur 2d, Pleading § 8.
  73 Am Jur 2d, Summary Judgment §§ 15, 16.
[7] 29 Am Jur 2d, Evidence § 90.
  73 Am Jur 2d, Statutes § 204.
[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 31.
  Municipal immunity from liability for torts. 60 ALR2d 1198.
[9] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 *et
seq.*
[10] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 34.

gent performance of a housing inspection pursuant to the ordinance in controversy for which a fee is charged is not an act in the exercise or discharge of a governmental function, rendering appellant immune to tort liability.

3. In the present case, no governmental immunity existed as a matter of law or as a matter of fact.

4. No unfair prejudice to the opposite party existed as a result of the filing of the second amended complaint.

Affirmed and remanded.

MacKenzie, P.J., dissented. She disagrees that governmental immunity was inapplicable as a matter of law and that it was unnecessary for plaintiff to plead facts in avoidance of governmental immunity. She would conclude that enforcement of regulatory ordinances is a governmental function, that the inspection performed here was performed in the course of enforcing a regulatory ordinance, and that such inspections are within the scope of immunity since they are performed in the exercise or discharge of a governmental function. She would reverse and remand for further proceedings, including the entry of an appropriate order of summary judgment.

### Opinion of the Court

1. GOVERNMENTAL IMMUNITY — HOUSING INSPECTIONS.

The negligent performance of a housing inspection pursuant to a city ordinance requiring a pre-sale inspection report and certificate of approval to be issued for a reasonable fee prior to a sale or transfer of a one- or two-family residential structure, with certain exceptions, is not an act in the exercise or discharge of a governmental function which renders the city immune to tort liability (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — HOUSING INSPECTIONS — OF ESSENCE TO GOVERNING.

Pre-purchase inspections of a structure performed by a city pursuant to a city ordinance which requires a pre-sale inspection report and certificate of approval issued pursuant thereto are not of essence to governing and such activity is nongovernmental for governmental immunity purposes.

3. ACTIONS — GOVERNMENTAL IMMUNITY — PLEADING.

A plaintiff, to state an actionable claim against a governmental agency, must allege facts in avoidance of governmental immunity.

4. PLEADING — AMENDMENT OF PLEADING — LEAVE OF COURT — JUSTIFICATION FOR AMENDMENT — PREJUDICE — STATEMENT BY TRIAL COURT — COURT RULES.

Leave to amend a pleading should be freely given when justice so requires and although the decision whether to allow the amendment is within the trial court's discretion, as a general rule, leave should be granted absent unfair prejudice to the opposing party (GCR 1963, 118.1).

DISSENT BY MACKENZIE, P.J.

5. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment based upon a failure to state a claim upon which relief can be granted should be granted if, accepting as true all well-pled facts in the plaintiff's complaint, plaintiff's claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery (GCR 1963, 117.2[1]).

6. GOVERNMENTAL IMMUNITY — SUMMARY JUDGMENT — PLEADING.

A plaintiff faced with a defendant's motion for summary judgment based upon governmental immunity has the burden of pleading facts in avoidance of immunity.

7. WORDS AND PHRASES — JUDICIALLY NOTICED FACTS.

A judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court or is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned (MRE 201[b]).

8. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION.

The crux of the governmental essence test for deciding whether a government agency is immune by statute from liability for a tort should be an inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government; unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this guideline, although performed by a government agency, are not governmental functions and therefore the agency is not immune.

9. GOVERNMENTAL IMMUNITY — REGULATORY ORDINANCES — GOVERNMENTAL FUNCTIONS.

The enforcement of regulatory ordinances is a governmental

*function which can be effectively accomplished only by the government.*

10. GOVERNMENTAL IMMUNITY — HOUSING INSPECTIONS — GOVERN-
    MENTAL FUNCTIONS — FEES.

    *Governmental immunity from tort liability extends to pre-pur-
chase building inspections performed by a city pursuant to an
ordinance requiring such inspections where such inspections
are performed in the exercise or discharge of a governmental
function; the charging of a fee for the performance of such an
inspection does not affect such immunity where such inspec-
tions are not performed for a profit to meet the needs of
individual buyers.*

*Sylvester Delaney,* Deputy Corporation Counsel,
and *Joseph N. Baltimore* and *Thomas B. Serowik,*
Assistants Corporation Counsel, for defendant.

Before: MacKenzie, P.J., and Bronson and T. R.
Thomas,* JJ.

T. R. Thomas, J. This Court granted an applica-
tion for leave to appeal to defendant-appellant,
City of Detroit, from an order of the trial court
denying appellant's motion for summary judgment
under GCR 1963, 117.2(1). Appellant's motion for
summary judgment claimed plaintiff-appellee had
failed to state a claim upon which relief could be
granted and was based upon appellant's claim of
governmental immunity from suit. Plaintiff-appel-
lee had sued for damages on the allegation that
the appellant negligently performed a housing
inspection that was required by appellant's ordi-
nance prior to sale.

Essentially, on December 7, 1977, plaintiff-appel-
lee, Ronald Brand, contracted to purchase a house
in the City of Detroit from defendant-appellees
Fred and Ruth Hartman. On June 2, 1977, the
house was inspected by an employee of the City of

    * Circuit judge, sitting on the Court of Appeals by assignment.

Detroit pursuant to Ordinance 124-H, §§ 12-7-1 *et seq.*, as amended, of the Municipal Code of the City of Detroit for a fee of $92.50. Thereafter, plaintiff-appellee brought suit against defendant-appellees, the Hartmans and Real Estate One, Inc., seeking damages because screens and storm windows were missing, contrary to the purchase agreement, and because the house suffered from water leaks which cause structural damage. By first amended complaint, appellant was added as a defendant and damages were sought against it on the theory that it negligently examined the house and issued a certificate of approval which failed to list the building's defects. The plaintiff-appellee alleged no intentional act on the part of the appellant.

Further, after denying the appellant's motion for summary judgment, the trial court allowed plaintiff-appellee to file a second amended complaint. The second amended complaint added that the ordinance, by imposing an inspection upon the seller of a house, requiring him to repair any disclosed defects and charging a fee of $92.50 before a sale is allowed, is an invasion of the private housing market and not a governmental function. Again, no intentional act on the part of the appellant was alleged.

The ordinance in question, Ordinance 124-H, §§ 12-7-1 *et seq.*, as amended, of the Municipal Code of the City of Detroit makes it unlawful to sell or transfer, or act as a broker for a sale or transfer, a dwelling unless a valid certificate of approval is tendered to the purchaser or transferee at the time of sale or transfer. There are exceptions to this general rule which allow for a waiver of the tender of the certificate of approval and delay the obtaining of the certificate of ap-

proval until the occupancy of the dwelling. A dwelling is defined as a one- or two-family residential structure.

Exempt from the provisions of the ordinance are sales or transfers between governmental agencies; sales or transfers where the purchaser or transferee have occupied the dwelling for the 12 months immediately prior to the sale or transfer, except in the instance where the sale or transfer is by exercise of an option to purchase; sales or transfers prior to the effective date of the ordinance; and, sales and transfers for which a signed purchase agreement was entered into prior to the effective date of the ordinance.

The ordinance further directs the Buildings and Safety Engineering Department of the City of Detroit to issue such a certificate of approval only after an inspection. The inspections are to be performed consistently with an inspection guideline to be prepared by the department and approved by the city council. The department is also charged with setting reasonable fees for inspections made pursuant to the ordinance.

The record in this case does not disclose the list of inspection guidelines to be used in inspections relating to the enforcement of the ordinance but by the terms of the ordinance they are to constitute the complete scope of repairs required for the issuance of the certificate or to be noted in an inspection report. From a reading of the transcript of the motion for summary judgment they include an inspection of the electrical units, the plumbing, the heating, and the general condition of the house.

The appellant raises three issues, the central of which is whether the specific act complained of, namely the negligent performance of a housing

inspection for which a fee is charged, is an act in the exercise or discharge of a governmental function, rendering appellant immune to tort liability. The others are whether the trial court erred in denying appellant's motion for summary judgment on the ground that the plaintiff failed to plead facts in avoidance of governmental immunity and whether the trial court erred in allowing plaintiff-appellee to file a second amended complaint after appellant filed for leave to appeal.

As to the central issue, MCL 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." .

The meaning of the term "governmental function" as used in the foregoing statute was considered by the Michigan Supreme Court in the cases of *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978).

As this Court stated in the case of *Willis v Nienow,* 113 Mich App 30, 33-34; 317 NW2d 273 (1982):

"No clear majority position emerged in *Parker* and *Perry,* but this Court has consistently applied the test formulated by Justice MOODY who emerged as the 'swing vote' in those cases. See, for example, *Cronin v Hazel Park,* 88 Mich App 488; 276 NW2d 922 (1979); *Ross v Consumers Power Co,* 93 Mich App 687; 287

NW2d 319 (1979); *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979), and *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341 (1980). Justice MOODY agreed with Justices FITZGERALD, KAVANAGH, and LEVIN that the statutory term 'governmental function' is subject to judicial refinement and that the term is limited to those activities which are of essence to governing. However, Justice MOODY's view of that test differs from that of his colleagues. See *Parker, supra,* p 200.

" 'To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune.' "

The ordinance subject to scrutiny in this case is not a construction, housing, or health code. Not all of the dwellings in the City of Detroit are subject to its provisions; it is not pervasive as to the quality or condition of Detroit housing; it concerns only one- and two-family residential structures at the time of sale or transfer. It is a pre-sale inspection ordinance which requires that an inspection report and certificate of approval be issued, for a reasonable fee, at sale or transfer except a sale or transfer by lease, mortgage, gift, devise, bequest or lien foreclosure. Although the list of inspection guidelines referred to in the ordinance is not a matter of record, it can only be assumed that such guidelines concern themselves with the objectives of a housing or health ordinance which would be

enforceable at all times and not just at the time of sale or transfer.

This inspection ordinance is not of the essence of governing in any sense of the expression. Private persons or organizations could and regularly do inspect one- and two-family residential structures offered for sale or transfer to achieve a variety of objectives not the least of which is to determine the presence of termites. Further, such pre-purchase housing inspections have historically been totally within the prerogative of the residential home buyer.

We would, therefore, hold that the inspections done pursuant to this ordinance and the certificates of approval issued pursuant thereto are not of essence to governing. Such activity is nongovernmental even under Justice MOODY's broader statement of the governmental essence test.

In the case of *Ross v Consumers Power Co,* 93 Mich App 687, 698-699; 287 NW2d 319 (1979), this Court said:

"In reaching our decision, we are mindful of the strong policy considerations which call for the limitation of governmental immunity. Certainly today's social climate has resulted in a relationship between government and the individual where it can no longer be said with conviction that 'it is better that an individual should sustain an injury than the public should suffer an inconvenience'. *Russell v Men of Devon,* 2 Durnford & East's Term Rep 667, 673; 100 Eng Rep 359, 362 (1788). Rather, we would agree with Professor Borchard, who already long ago said, 'justice and a respect for the rights of the individual demand that Government, national, state and municipal * * * adopt necessary legislation to admit the legal responsibility of the State or city for the torts of its officers'. Borchard, *Governmental Liability in Tort,* 34 Yale L J 1, 3 (1924). Professor Cooperrider's understanding of the manner in which the doctrine of governmental immunity first found its

way into the law of this state should lead us to recognize that its legitimate application calls for careful analysis, and that such analysis should result in the doctrine being the exception rather than the rule: that we should speak in terms of governmental liability rather than governmental immunity." (Footnote omitted.)

The trial judge did not err in determining that the specific act complained of, namely the negligent performance of a housing inspection pursuant to the ordinance in controversy in this case for which a fee is charged, is not an act in the exercise or discharge of a governmental function, rendering appellant immune to tort liability.

The second and third issues presented in this case for decision can be disposed of in singularity. It is true that a plaintiff must allege facts in avoidance of governmental immunity. *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976). However, in the present case, no governmental immunity existed as a matter of law or as a matter of fact.

Further, in *Rubino v Sterling Heights,* 94 Mich App 494, 499; 290 NW2d 43 (1979), we said:

"GCR 1963, 118.1 permits a party to amend its pleading by leave of court, which 'shall be freely given when justice so requires'. Although the decision whether to allow amendment is within the trial court's discretion, *Leahy v Henry Ford Hospital,* 84 Mich App 719, 722; 271 NW2d 34 (1978), as a general rule, leave should be granted absent unfair prejudice to the opposing party. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 71 Mich App 177; 247 NW2d 589 (1976), *rev'd on other grounds* 400 Mich 184; 253 NW2d 646 (1977)."

No such unfair prejudice to the opposite party

exists as a result of the filing of the second amended complaint.

Affirmed and remanded.

BRONSON, J., concurred.

MACKENZIE, P.J. *(dissenting)*. I respectfully dissent. The motion for summary judgment pursuant to GCR 1963, 117.2(1) at issue in this interlocutory appeal by defendant City of Detroit should only have been granted if, accepting as true all well-pled facts in plaintiff's complaint, plaintiff's claim was so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery; however, plaintiff had the burden of pleading facts in avoidance of governmental immunity. *Furness v Public Service Comm,* 100 Mich App 365, 368; 299 NW2d 35 (1980). The majority here holds that it was unnecessary for plaintiff to plead such facts because governmental immunity was inapplicable as a matter of law. In so holding, the majority has gone beyond reviewing the circuit court's resolution of the city's motion for summary judgment and has, in effect, granted partial summary judgment for plaintiff pursuant to GCR 1963, 117.2(2) on the issue of governmental immunity on the theory that no factual development could possibly establish governmental immunity as a defense.

The majority's decision is premised on such unpled "facts" as the following:

"Private persons or organizations could and regularly do inspect one- and two-family residential structures offered for sale or transfer to achieve a variety of objectives not the least of which is to determine the presence of termites. Further, such pre-purchase hous-

ing inspections have historically been totally within the prerogative of the residential home buyer."

It would seem that evidence could be produced to contradict the foregoing. MRE 201(b) provides:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The "facts" relied upon by the majority fall within neither of these categories.

Had the majority opinion merely affirmed the decision of the trial court, I would still disagree. The generally recognized test of governmental immunity is that stated in *Parker v Highland Park,* 404 Mich 183, 200; 273 NW2d 413 (1978) (MOODY, J., *concurring):*

"[T]he crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune."

In *Central Advertising Co v Novi,* 91 Mich App 303, 317; 283 NW2d 730 (1979), the Court held that adoption and enforcement of a regulatory sign ordinance was within the scope of governmental immunity under the foregoing test. In *Hoeppner v Dep't of Labor,* 104 Mich App 334, 338;

304 NW2d 841 (1981), the Court held that performance of a safety inspection under the Michigan Occupational Safety and Health Act was a governmental function under the foregoing test. The Court reasoned that, while safety inspections are sometimes performed in the private sector, only government inspections could meet the statutory goal of ensuring a safe workplace for *all* employees in the state.

See also *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389, 395; 283 NW2d 749 (1979), in which the Court held that a police and fire department investigation of arson aimed at a subsequent criminal prosecution was a governmental function. I would conclude that enforcement of regulatory ordinances is a governmental function. Due to its unique character and governmental mandate, such enforcement can be effectively accomplished only by government. The *Central Advertising Co, Hoeppner* and *Antikiewicz* decisions support such a conclusion.

The inspection performed here by the city appears on its face to have been performed in the course of enforcing a regulatory ordinance. Plaintiff has pled no facts in avoidance of such a conclusion. While such inspections may have analogues in the private sector, they are within the scope of immunity here because they were performed in the exercise or discharge of a governmental function. See MCL 691.1407; MSA 3.996(107); *Duncan v Detroit,* 78 Mich App 632, 634; 261 NW2d 26 (1977); *Cronin v Hazel Park,* 88 Mich App 488, 491; 276 NW2d 922 (1979) and *Antkiewicz, supra,* p 395.

That the city charges a fee for performing an inspection makes no difference. See, for example, MCL 691.1413; MSA 3.996(113). Plaintiff has not

pled any facts which suggest that the city is in the business of performing safety inspections for profit to meet the needs of individual buyers.

I would reverse and remand for further proceedings, including the entry of an appropriate order of summary judgment.