BUTCHER v CITY OF DETROIT

Docket No. 64900. Submitted October 7, 1983, at Detroit.—Decided February 6, 1984. Leave to appeal applied for.

The City of Detroit has an ordinance requiring a valid certificate of approval or inspection report from the city before a person may sell or transfer a one- or two-family residential structure in the city. The ordinance also authorizes an inspection fee to be charged to the seller. Janet Butcher, on behalf of herself and others similarly situated, brought suit in Wayne Circuit Court, alleging that the ordinance was invalid for numerous reasons. The court, John H. Hausner, J., granted a partial summary judgment for the plaintiff holding that the ordinance was unconstitutional. The defendant appealed by leave granted.
*Held:*

The decision of the circuit court should be reversed. The City of Detroit has the power to enact the ordinance and the ordinance does not constitute an unconstitutional taking of property without due process. The ordinance does not conflict with the provisions of any state statute. The ordinance neither destroys nor reduces the property's value and, rather than preventing the owner from enjoying his or her property, the ordinance merely imposes an inspection and a fee.

Reversed and remanded.

1. MUNICIPAL CORPORATIONS — POLICE POWER.

Generally, the police power rests in the state and the power

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 193, 423-425.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 134.
[3, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 128.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 438-441.
[5] 16A Am Jur 2d, Constitutional Law § 373.
[7] 16A Am Jur 2d, Constitutional Law §§ 583-585.
[8] 16A Am Jur 2d, Constitutional Law §§ 586, 587.

belongs to a municipality only if specifically conferred on it by a statute or the constitution.

2. MUNICIPAL CORPORATIONS — HOME RULE ACT.

The home rule act provides that each city charter shall provide for the public peace and health for the safety of persons and property (MCL 117.3[j]; MSA 5.2073[j]).

3. MUNICIPAL CORPORATIONS — POLICE POWER — HOME RULE CITIES.

The police power of Detroit as a home rule city is of the same general scope and nature as that of the state, except as limited by the constitution or by statute.

4. MUNICIPAL CORPORATIONS — POLICE POWER — ORDINANCES.

Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power.

5. STATUTES — POLICE POWER.

The police power is elastic and changes shape as varying social conditions demand.

6. MUNICIPAL CORPORATIONS — HOME RULE CITIES — INSPECTION FEES.

A home rule city has authority to require an inspection and to collect an inspection fee before a home owner may sell his one- or two-family residence, and the fee shall be paid by the seller and shall not be charged to the borrower (MCL 438.31a; MSA 19.15[1a]).

7. CONSTITUTIONAL LAW — PROPERTY — DUE PROCESS CLAUSE.

The term "property" as used in the Due Process Clause includes not only title and possession, but also the rights of acquisition and control, the right to make any legitimate use or disposal of the thing owned, such as to pledge it for a debt, or to sell or transfer it.

8. CONSTITUTIONAL LAW — PROPERTY.

Not every destruction or injury to property by governmental action is a taking of property in the constitutional sense; rather, the determination of whether a state law unlawfully infringes upon a landowner's property in violation of the taking clause requires an examination of whether the restriction on

private property forces some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

*Robert E. Butcher,* for plaintiff.

*Thomas B. Serowik,* Assistant Corporation Counsel, *Otto J. Hetzel,* Special Counsel, and *Craig, Farber & Downs* (by *Roger E. Craig),* for defendant.

Amici Curiae:

Michigan Legal Services (by *Robert F. Gillett),* for Westside Mothers Welfare Rights Organization, United Community Housing Coalition, and Michigan Legal Services.

*Ronald J. Palmer* and *David P. Trahan,* for Standard Federal Savings and Loan Association.

Before: M. J. KELLY, P.J., and HOOD and SHEPHERD, JJ.

HOOD, J. On June 3, 1982, the trial court granted partial summary judgment for plaintiff. It held that defendant's ordinance requiring an inspection for one- and two-family dwellings is unconstitutional. Defendant appeals by leave granted.

Basically, defendant's ordinance, 124-H, §§ 12-7-1 *et seq.,*[1] requires a valid certificate of approval or a valid inspection report from defendant before a

---

[1] This ordinance is more fully explained in *Brand v Hartman,* 122 Mich App 326, 330-331, 333; 332 NW2d 479 (1983), held in abeyance by order of the Michigan Supreme Court, Docket No. 71359, September 15, 1983.

person may sell or transfer a one- or two-family residential structure in the city. It also authorizes an inspection fee.[2]

On June 10, 1981, plaintiff sued[3] defendant, alleging that the ordinance is invalid for numerous reasons, including: (1) the city was without authority to regulate such sales and to demand an inspection fee; (2) the ordinance violated equal protection; (3) the ordinance amounted to an unconstitutional taking of property without due process; and (4) the ordinance authorized an unconstitutional search and seizure.

In its order granting partial summary judgment, the circuit court ruled that the ordinance:

"constituted a taking of property of plaintiff and the members of the class without due process of law, contrary to § 17 of art 1 of the Michigan Constitution of 1963 and the 14th Amendment to the United States Constitution and, further, that defendant was, under the law of the State of Michigan, without either express or implied authority or delegated authority to either regulate or restrict the sales of one or two family residential structures within its boundaries, and certainly not for the purposes which are claimed or appear on this record;"

We disagree on both counts. First, we believe that defendant does have the power to enact such an ordinance. Second, the ordinance does not constitute an unconstitutional taking of property without due process.[4]

---

[2] Plaintiff alleges that the inspection fee in her case was $110.

[3] On April 23, 1982, the trial court certified this suit as a class action.

[4] Although the parties, particularly plaintiff, have addressed other reasons why the ordinance is (or why it is not) invalid, we will address only the grounds ruled on by the trial court.

DEFENDANT'S AUTHORITY TO ENACT ORDINANCE
124-H, §§ 12-7-1 *et seq.*

Generally, "[t]he police power rests in the State". *Attorney General ex rel Lennane v Detroit,* 225 Mich 631, 638; 196 NW 391 (1923). This power belongs to a municipality only if specifically conferred on it by statute or by the Constitution. *Clements v McCabe,* 210 Mich 207, 215; 177 NW 722 (1920); *Kalamazoo v Titus,* 208 Mich 252; 175 NW 480 (1919).

The 1908 Constitution, however, changed the role of the municipality in our governmental life in this state. Const 1908, art 8, § 21 stated:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the constitution and general laws of this state."

This section was readopted in essentially the same form in Const 1963, art 7, § 22.

The home rule act as it now stands includes: "Each city charter shall provide * * *: * * * For the public peace and health and for the safety of persons and property". MCL 117.3(j); MSA 5.2073(j). In other words, before 1908,

"municipal corporations exercised only such powers as were expressly granted to them by the legislature * * *.

*     *     *

"* * * [U]nder [the 1908] Constitution and our home-rule cities act, cities may exercise substantially greater

powers essential to local self-government than they previously were allowed to exercise." *Dooley v Detroit,* 370 Mich 194, 207, 210; 121 NW2d 724 (1963).[5]

See also *Gallup v Saginaw,* 170 Mich 195; 135 NW 1060 (1912). The home rule act is to be liberally construed. *Mikelsavage v Detroit,* 343 Mich 566; 73 NW2d 266 (1955); *1426 Woodward Avenue Corp v Wolff,* 312 Mich 352; 20 NW2d 217 (1945); *Detroit v Recorder's Court Judge,* 104 Mich App 214; 304 NW2d 829 (1981), *lv den* 413 Mich 866 (1982). In *People v Sell,* 310 Mich 305, 315; 17 NW2d 193 (1945), the Supreme Court ruled that "[e]xcept as limited by the Constitution or by statute, the police power of Detroit as a home rule city is of the same general scope and nature as that of the State". See also *Tally v Detroit,* 54 Mich App 328, 334; 220 NW2d 778 (1974). In *Cady v Detroit,* 289 Mich 499, 514; 286 NW 805 (1939), *app dis* 309 US 620; 60 S Ct 470; 84 L Ed 984 (1940), the Supreme Court defined police power expansively:

"Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, *the stabilization of the use and value of property,* the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power. Changes in such regulations must be sought through the ballot or the legislative branch." (Emphasis added.)[6]

The police power is elastic and changes shape as

---

[5] *Dooley* in fact called it a "radical" change. 370 Mich 208, fn 4.

[6] In *Cady,* the Supreme Court upheld an ordinance prohibiting the parking of occupied trailers in trailer camps for more than 90 days per year. If it had interpreted *Clements* the way that plaintiff now requests us to, the Supreme Court in *Cady* could not possibly have upheld the ordinance.

varying social conditions demand. *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd,* 397 Mich 337; 245 NW2d 1 (1976); *Sell, supra,* 310 Mich 316.

Although even a home rule city does not have power concurrent with the Legislature and in fact needs at least statutory authorization to pass such ordinances,[7] we rule that defendant does generally have the power to require an inspection before a home owner may sell his one- or two-family residence. Such an inspection deters fraud and helps enforce the city's building code. Both the means and goals are validly within defendant's police power. The home rule act by itself is specific enough to grant defendant the authority to enact such an ordinance.[8]

Not only does defendant normally have the power to enact an ordinance such as 124-H, §§ 12-7-1 *et seq.,* but the ordinance does not conflict with any statute. Michigan's first housing code, 1917 PA 167, contained the following provision:

"The provisions of the act shall be held to be the minimum requirements adopted for the protection of health, welfare and safety of the community. Nothing herein contained shall be deemed * * * to prevent any city * * * from enacting and putting in force from time to time ordinances and regulations imposing requirements higher than the minimum requirements laid down in this act; nor shall anything herein contained be deemed to prevent * * * such ordinances and regulations, remedies and penalties similar to those prescribed herein. And every such city * * * is empowered to enact such ordinances and regulations and to prescribe for their enforcement." § 8.

---

[7] Cases like *Detroit v Recorder's Court Judge, supra, Lennane, supra,* and *Titus, supra,* amply illustrate this point.

[8] OAG, 1977-1978, No 5280, p 393 (March 23, 1978), reached the same conclusion.

Every housing code since has had a similar provision.[9] Clearly, under the standard enunciated in *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977), *cert den* 435 US 1008; 98 S Ct 1879; 56 L Ed 2d 390 (1978), there has been no pre-emption.

Plaintiff takes the position that the ordinance conflicts with the statutes in two ways. First, she argues that the ordinance is invalid because the standards used for the point-of-sale inspections are lower than those required by MCL 333.12211; MSA 14.15(12211). We disagree. The city may continue to enforce state-mandated requirements by other, more standard means. The particular inspection method challenged here is aimed at the specific practice of fraudulent conveyance of homes with serious structural and other deficiencies. This supplemental form of housing regulation is not expressly forbidden by statute. Such fraudulent transactions pose an obvious threat to the health and welfare of defendant's citizens, and an ordinance directed against them is within the authority of the City of Detroit.

Second, plaintiff claims that the ordinance violates MCL 565.5; MSA 26.524 by imposing an implied warranty "that the dwelling conforms with the inspection guidelines". In her complaint, plaintiff alleged that she had contracted to sell her property and that the implied warranty had thus arisen from the sale. However, such contracts are specifically excluded from the definition of "conveyance" as used in MCL 565.5; MSA 26.524. *Weeks v Slavik Builders, Inc,* 24 Mich App 621,

---

[9] The latest code, enacted by 1978 PA 368, contained the following provision: "This part shall be construed to supplement and not to supersede any powers otherwise vested in local governments. Local governments may adopt ordinances deemed necessary or appropriate to promote the health, safety and welfare of the people of this state." MCL 333.12222; MSA 14.15(12222), repealed by 1980 PA 431.

628; 180 NW2d 503 (1970), *aff'd* 384 Mich 257; 181 NW2d 271 (1970).

Plaintiff also argues that defendant lacks authority to collect its inspection fee. However, MCL 438.31a; MSA 19.15(1a) expressly authorizes it: "A charge for inspection required by a local unit of government shall be paid by the seller and shall not be charged to the borrower."

Plaintiff's arguments are therefore unconvincing.

### Due Process—Unconstitutional Taking of Property

The term "property" as used in the Due Process Clause "includes not only title and possession, but also the rights of acquisition and control, the right to make any legitimate use or disposal of the thing owned, such as to pledge it for a debt, or to sell or transfer it". *Rassner v Federal Collateral Society, Inc,* 299 Mich 206, 214; 300 NW 45 (1941). The mere fact that property itself has not been physically taken does not necessarily mean that the Due Process Clause has not been violated: "[W]here the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, * * * it is a taking within the * * * Constitution." *Pearsall v Board of Supervisors of Eaton County,* 74 Mich 558, 561; 42 NW 77; 4 LRA 193 (1889). See also *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 641-642; 178 NW2d 476 (1970).

On the other hand:

" 'not every destruction or injury to property by governmental action has been held to be a "taking" in the constitutional sense." *Armstrong v United States,* 364

US 40, 48; 80 S Ct 1563; 4 L Ed 2d 1554 (1960). Rather, the determination whether a state law unlawfully infringes a landowner's property in violation of the Taking Clause requires an examination of whether the restriction on private property 'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' *Id.* [p 49; 80 S Ct 1563; 4 L Ed 2d 1554]. This examination entails inquiry into such factors as the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations. * * * When 'regulation goes too far it will be recognized as a taking.' " *PruneYard Shopping Center v Robins,* 447 US 74, 82-83; 100 S Ct 2035, 2041-2042; 64 L Ed 2d 741, 753 (1980). (Footnote omitted.)

In the present case, the ordinance neither destroys nor reduces the property's value. In fact, if anything, by requiring post-inspection repairs, it enhances value. Rather than preventing the owner from enjoying his or her property, it merely imposes an inspection and a fee. Such a burden on the property holder is light. The inhibition is not on the transfer of property but upon the failure to have the home inspected.

On the other hand, the ordinance ensures that one- and two-family dwellings meet certain minimum requirements. The ordinance is defendant's way of ensuring that a buyer has more recourse on buying a house less valuable than anticipated than merely stoically accepting the saw "caveat emptor". Moreover, the ordinance helps combat housing deterioration.

In summary:

"Rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in it by the Constitution, may think necessary and expedi-

ent. *Holden v Hardy* [169 US 366; 18 S Ct 383; 42 L Ed 780 (1898)]. Where the question of the facts established is a fairly debatable one, courts accept and carry into effect the opinion of the legislature. *Old Dearborn Distributing Co v Seagram-Distillers Corp* [299 US 183; 57 S Ct 139; 81 L Ed 109; 106 ALR 1476 (1936)]. Courts cannot substitute their opinions for that of the legislative body on questions of policy." *Cady, supra,* 289 Mich 508-509.

The ordinance does not amount to an unconstitutional taking of property without due process.

Reversed and remanded.