MOORE v CITY OF DETROIT (ON REMAND)

Docket No. 76710. Submitted April 29, 1986, at Lansing. Decided April 9, 1987.

Annie Moore and others brought an action for mandamus in the Wayne Circuit Court, seeking to compel the City of Detroit and Creighton Lederer, in his official capacity as the Director of Detroit's Department of Building Safety and Engineering, to implement Detroit City Ordinance No. 556-H. The ordinance provides a mechanism by which private individuals may enter, inhabit and rehabilitate abandoned single-family dwellings. A person wishing to do so makes application to the Department of Building Safety and Engineering and, after an investigation by that department, notice to interested parties, a hearing, and the filing of a satisfactory recommendation, enters into an "abatement" contract which operates as a temporary permit under the building code. The circuit court, Michael J. Connor, J., granted mandamus and also allowed the Detroit City Council to intervene as plaintiff. Defendants appealed, claiming that the ordinance is invalid because it violates the doctrine of separation of powers, conflicts with the Detroit City Charter and is preempted by the State Construction Code Act and the Uniform Condemnation Procedures Act. The Court of Appeals affirmed, holding, inter alia, that the ordinance represents a proper exercise of the city's police power, and not its powers of eminent domain. 146 Mich App 448 (1985). Defendants filed an application with the Supreme Court for leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for a decision on whether the ordinance unconstitutionally deprives property owners of their property interests without due process of law or just compensation. 424 Mich 905 (1986).

The Court of Appeals *held:*

Ordinance 556-H authorizes only a temporary physical possession of property for the purpose of abating a public nuisance

REFERENCES

Am Jur 2d, Constitutional Law §§ 403, 416, 417.

See the annotations in the Index to Annotations under Due Process; Property.

and relies upon other, well-established judicial processes, i.e., an action to quiet title or delinquent tax proceedings, in providing for the transfer of title to property. Built into the ordinance are ample notice and opportunity provisions which protect the right of the property owner to terminate the nuisance abatement contract at any point. Given the nature of the intrusion, the purpose sought to be accomplished and the ease with which a property owner may terminate a nuisance abatement contract, Ord. 556-H does not constitute an unreasonable exercise of the city's police powers.

Affirmed.

CONSTITUTIONAL LAW — DUE PROCESS — POLICE POWERS — OCCUPANCY OF REAL PROPERTY WITHOUT COMPENSATION.

A statute or ordinance authorizing physical occupancy of property without compensation to the property owner in the exercise of the government's police powers to promote the health and safety of its citizens must be reasonable under the surrounding circumstances.

*Emily C. Hall,* and *Richard A. Soble,* for plaintiffs.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, *Joseph N. Baltimore, William L. Woodard* and *Harnetha Jarrett Williams,* Assistant Corporation Counsel, and *Downs & Zagaroli, P.C.* (by *Tom Downs* and *Roger F. Lane*), of Counsel, for defendants.

*Colista, Urso, Adams & Dettmer, P.C.* (by *F. Philip Colista* and *Constance J. Allen*), for the Detroit City Council.

ON REMAND

Before: BEASLEY, P.J., and M. J. KELLY and M. WARSHAWSKY,* JJ.

M. J. KELLY, J. This case is before us on remand from the Supreme Court for a decision on whether

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Detroit City Ordinance No. 556-H "unconstitution-
ally deprives property owners of their property
interests without due process of law or just com-
pensation." 424 Mich 905; 384 NW2d 399 (1986).
We had expressly declined to consider this issue in
our earlier opinion for reasons stated therein. 146
Mich App 448, 457-458; 382 NW2d 482 (1985).
Having now considered the issue as directed by the
Supreme Court, we hold that Ord. 556-H does not
deprive property owners of a property interest
within the prohibitions of the state or federal due
process clauses.

Defendants' due process challenge to Ord. 556-H
is a narrow one. Defendants argue that Ord. 556-H
authorizes the city to confiscate privately owned
property for a public purpose and thus involves
the exercise of the city's power of eminent domain
rather than its police powers. Defendants then
conclude that the omission of a provision in the
ordinance requiring just compensation renders the
ordinance violative of the property owners' due
process rights. Const 1963, art 10, § 2; *Pennsylva-
nia Coal Co v Mahon,* 260 US 393; 43 S Ct 158; 67
L Ed 322 (1922); *Smoke Rise, Inc v Washington
Suburban Sanitary Comm,* 400 F Supp 1369, 1381-
1382 (D Md, 1975). We earlier held that Ord. 556-
H was enacted under the police powers granted to
Detroit as a home rule city. 146 Mich App 462-463.
We again conclude that Ord. 556-H represents an
exercise of the city's police powers and we reject
defendants' reliance on the law of eminent do-
main.
Section 12-11-46.1 of Ord. 556-H sets forth the
legislative findings on which the Detroit City
Council relied in enacting the nuisance abatement
ordinance:

(a) Scattered throughout the city are a large

number of unoccupied dwellings which are constantly broken into, vandalized, used for unsanitary or immoral purposes and are potential fire hazards.

(b) There are many unoccupied dwellings in the city which, because of their vacant status, constitute hazards to the health, safety, and welfare of the public.

(c) Certain vacant dwellings have reached a stage of disrepair and deterioration which create a public nuisance or exert a downgrading or blighting influence on the surrounding neighborhood, resulting in discouraging neighbors from making improvements to properties and thus adversely affecting the tax revenue of the city.

(d) Throughout the city, the number of vacant and deteriorated dwellings constituting public nuisances has become so high that traditional means of abating such nuisances have been ineffectual, and blight and deterioration of emergency proportions have resulted.

(e) Currently, tax delinquent abandoned dwellings revert to the state and are then deeded to the city through the state tax reversion process. However, this process takes several years, during which time many dwellings are lost through vandalism and deterioration.

(f) Permitting families to repair and move into abandoned homes within the city will preserve the residential housing stock of the city, increase neighborhood stability and provide needed homes for Detroit families.

These stated purposes fall within the city's powers to "provide for the public peace and health of its citizenry and promote the safety of persons and properties within its boundaries." 146 Mich App 462, citing *Cady v Detroit*, 289 Mich 499, 514; 286 NW 805 (1939), appeal dis 309 US 620; 60 S Ct 470; 84 L Ed 984 (1940), and *Butcher v Detroit*,

131 Mich App 698, 703; 347 NW2d 702 (1984), lv den 419 Mich 917 (1984). Although these goals, if achieved, will no doubt benefit the public, we are not persuaded that the taking authorized under Ord. 556-H is for a "public purpose" as that term has evolved under the law of eminent domain. Most significantly, Ord. 556-H does not impose upon the property owner a burden which should be borne by the public. See *Penn Central Transportation Co v New York City,* 438 US 104, 123-124; 98 S Ct 2646; 57 L Ed 2d 631 (1978); *Butcher v Detroit, supra.* In a disordered society, vacant houses develop into public nuisances, as that term is defined in Ord. 556-H, partly because of the action or inaction of their owners. It is neither unfair nor unjust for the city to impose the burden of abating these nuisances upon the individual owners rather than upon the public as a whole. Neighborhoods don't blight overnight.

Although we reject defendants' reliance on the law of eminent domain, our conclusion that Ord. 556-H represents an exercise of the city's police powers does not entirely resolve the issue of whether the ordinance unconstitutionally deprives property owners of their property interests without adequate compensation. See *Loretto v Teleprompter Manhattan CATV Corp,* 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982); *Smoke Rise, Inc, supra.* A statute or ordinance authorizing physical occupancy of property without compensation to the property owner must be reasonable under the surrounding circumstances. *Smoke Rise, Inc, supra.* Before considering the reasonableness of the occupancy authorized under Ord. 556-H, we find it helpful to visit a few of its procedural provisions.

Ord. 556-H does not by itself transfer title of property to the city or to the nuisance abatement

contractor.[1] Transfer of title must be achieved by the city through an action to quiet title, MCL 600.2932; MSA 27A.2932, or through delinquent tax proceedings, MCL 211.47; MSA 7.91.[2] Ord. 556-H simply creates a temporary right[3] in third parties to enter, occupy and repair a vacant home which has been declared by lawful authority to be an unlawful nuisance. At the end of the abatement period, the city will have obtained title to the property through prescribed judicial proceedings so that the property may then be sold by the city to the nuisance abatement contractor. Ord. 556-H, § 12-11-46.5(g). We note that the property owner is notified of the activity on his or her property at all stages of the abatement process and is provided numerous opportunities to assert ownership of the property, thereby terminating the nuisance abatement contract. It is significant that defendants in this case do not assert any due process challenge to the notice and hearing provisions of Ord. 556-H.

Since Ord. 556-H does not authorize permanent occupancy of private property by third persons, defendants' reliance on *Loretto, supra,* is not dispositive. The Supreme Court in *Loretto,* repeatedly emphasized that its decision is based upon the permanency of the government-authorized occupancy challenged therein. Defendants' reliance on *Loretto* stems from an erroneous interpretation of Ord. 556-H as authorizing the city to take title to real property.

---

[1] As evidenced by their brief on appeal after remand, defendants apparently believe that § 12-11-46.6 authorizes the city to seize title to the property upon which a nuisance is located. However, that section merely creates a statutory presumption of intent to abandon which may then be asserted in an action to quiet title.

[2] Defendants do not challenge the constitutionality of either of these two judicial proceedings.

[3] The maximum period during which the city may contract with a nuisance abatement contractor is thirty-six months.

Correctly interpreted, Ord. 556-H simply amends the city's original building code and creates an alternative to demolition or costly repairs by government or third persons who do not gain rights to occupy the property. Defendants agree that the city may authorize a third party to enter private property in order to demolish a building identified as a public nuisance and that the property owner has no right to just compensation for this taking. Defendants further admit that just compensation is not required where the city contracts with a third party to repair a building identified as a public nuisance. It is the nuisance abatement contractor's occupancy of the property while making repairs which defendants now challenge as unconstitutional.

Defendants, however, fail to adequately distinguish between a taking authorized under the original building code and the taking authorized under Ord. 556-H. Under both the original building code and Ord. 556-H, third parties are authorized by the city to enter onto private property for the purpose of abating a public nuisance. Although the entry and physical possession authorized under Ord. 556-H extends the duration of the physical occupancy and allows the third party to make general use of the property while abating the nuisance, obviously such possession is not more intrusive than demolition.

In any event, the dispositive inquiry is whether this extended physical possession is reasonable under the circumstances. We believe that it is. As noted by Justice Stevens in *Young v American Mini Theatres, Inc,* 427 US 50, 71; 96 S Ct 2440; 49 L Ed 2d 310 (1976), cities "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." After hav-

ing determined that existing mechanisms were ineffective in attacking the perils of abandoned homes scarring its neighborhoods, the city's legislative body enacted Ord. 556-H as an alternative method of abating these public nuisances. Defendants have failed to carry their burden of proving that this alternative is unreasonable and, therefore, unconstitutional. *Van Slooten v Larsen,* 410 Mich 21, 42; 299 NW2d 704 (1980). Ord. 556-H authorizes only a temporary physical possession of property for the purpose of abating a public nuisance and relies upon other, well-established judicial processes in providing for the transfer of title to property. Built into the ordinance are ample notice and opportunity provisions which protect the right of the property owner to terminate the nuisance abatement contract at any point. Given the nature of the intrusion, the purpose sought to be accomplished and the ease with which a property owner may terminate a nuisance abatement contract, we cannot say that Ord. 556-H constitutes an unreasonable exercise of the city's police powers.

Defendants briefly argue that Ord. 556-H is arbitrary and discriminatory because property owners will be treated differently based on the whims of nuisance abatement contractors regarding which houses will be occupied. While it is true that some houses capable of rehabilitation will be the subject of nuisance abatement contracts while others will be demolished or repaired by nonoccupant third parties, this difference in treatment is neither arbitrary nor unfair. We hold that it is a reasonable effort to solve a difficult problem. It may not work but it should be tried.

Defendants raise several other issues on appeal which we decline to address because the Supreme

Court remanded this case to us for the sole purpose of considering defendants' due process challenge.

Affirmed.