*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0458**

In Re The Matter of:
Pamela Annette Bowman, petitioner,
Appellant,

vs.

James John Wieczorek,
Respondent.

**Filed January 30, 2017
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-FA-10-9294

Pamela Annette Bowman, Cedar Rapids, Iowa (pro se appellant)

Brian J. Clausen, Clausen & Hassan, LLC, St. Paul, Minnesota (for respondent)

Jennifer Taylor, Hennepin County Guardian Ad Litem Program, Minneapolis, Minnesota
(guardian ad litem)

Considered and decided by Reyes, Presiding Judge; Tracy M. Smith, Judge; and

Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Pamela Annette Bowman and James John Wieczorek are the parents of two

children. The district court denied Bowman's motion to relocate to another state with the

children and denied her motion for sole legal custody and sole physical custody of both children. The district court also granted Wieczorek's motion for conduct-based attorney fees. We affirm.

**FACTS**

Bowman and Wieczorek lived together in the Twin Cities area for approximately 13 years, from 1997 to 2010, but did not marry. They are the parents of two girls: K.W., who was 17 at the time of the district court's decision in October 2015 and now is 19, and L.W., who was 10 at the time of the district court's decision and now is 11.

Between 2010 and 2014, the parties were before the district court on multiple occasions. In December 2010, Bowman commenced an emergency custody proceeding in which she requested permission to relocate to the Cayman Islands with the children so that she could attend medical school there. The district court denied her motion.

In May 2011, after engaging in mediation, Bowman and Wieczorek entered into a custody and parenting-time agreement. The agreement provided that the parties would share joint legal custody of both children and that Bowman would have sole physical custody of both children. The agreement provided that Wieczorek would have approximately eight or nine overnight visits per month during the school year and that the parties would have equal parenting time during the summertime. The agreement also provided that "[b]oth parents shall be listed as 'emergency contacts' for the children," that the "[p]arents shall always let each other know their current addresses . . . and shall notify each other in writing within twenty-four (24) hours of any changes," and that "[n]o changes

2

in school enrollment or participation shall be made without the consent of both parents or further Order of the Court."

Two years later, in May 2013, Bowman brought a motion seeking permission to relocate to Cedar Rapids, Iowa, with the children. After an evidentiary hearing, the district court denied the motion on the ground that relocation would not be in the children's best interests. The district court reasoned that Bowman had failed to provide details about her employment in Iowa, her proposed residence in Iowa, and her fiancé, who lived there. Furthermore, the district court noted that Bowman had a "pattern of behavior regarding decision making [that] suggests she will not involve [Wieczorek] in legal custodial decisions and will likely take advantage of the distance to further separate [Wieczorek] from the children's lives."

The events underlying this appeal began in late August 2014, when Wieczorek received an e-mail message from Bowman stating that she was moving to Albert Lea and would enroll the children in schools there. But Wieczorek discovered that Bowman had enrolled the children in a school in Cedar Rapids two weeks earlier, without his knowledge or consent. On the enrollment form of the Cedar Rapids school, Bowman had not provided Wieczorek's emergency contact information.

In early September 2014, Wieczorek brought an emergency motion for temporary relief. He sought temporary sole legal custody and temporary sole physical custody of both children, temporary supervised parenting time for Bowman, the appointment of a guardian *ad litem*, and an award of conduct-based attorney fees. Wieczorek also requested sole legal custody and sole physical custody of both children on a permanent basis (though he later

3

abandoned his request for sole physical custody of K.W.). The district court appointed a guardian *ad litem*. In early October 2014, the district court awarded Wieczorek temporary sole legal custody of both children, awarded Wieczorek temporary sole physical custody of L.W., awarded Bowman temporary sole physical custody of K.W. on the condition that Bowman reside in the Twin Cities area, and reserved ruling on Wieczorek's motion for attorney fees.

In early December 2014, Bowman filed a second motion to relocate to Iowa with the children. After a hearing, the district court ordered that Wieczorek retain temporary sole legal custody of both children and temporary sole physical custody of L.W. The district court ordered that Bowman retain sole physical custody of K.W. so long as she was immediately enrolled in one of two high schools in the Twin Cities area. The district court scheduled an evidentiary hearing on Bowman's motion to relocate, on Wieczorek's motion for attorney fees, and on the issues of custody and parenting time.

Meanwhile, in September 2014, when Wieczorek had temporary custody of both children, K.W. induced L.W. to run away with her. The children were missing for three days until police found them in a park. K.W. did not attend high school throughout the 2014-2015 school year and was adjudicated a truant.

The district court conducted an evidentiary hearing on May 13, May 22, and June 5, 2015. The district court received testimony from Bowman, Wieczorek, the guardian *ad litem*, L.W.'s teacher, a private custody and parenting-time evaluator, a private mental-health evaluator, Wieczorek's mother, a therapist for Bowman and K.W., a friend of Bowman, and Bowman's fiancé.

On October 5, 2015, the district court issued a detailed 25-page, single-spaced order. The district court awarded Wieczorek sole legal custody and sole physical custody of L.W. and awarded Bowman sole legal custody and sole physical custody of K.W. The district court found that K.W. has a negative influence on her younger sister and that Bowman is unable to encourage a positive relationship between L.W. and Wieczorek. The district court denied Bowman's motion to relocate, reasoning that her relocation would result in a "severe reduction" of Wieczorek's parenting time with L.W. and that Bowman had failed to satisfy her burden of showing that such a reduction in Wieczorek's parenting time would be appropriate. The district court granted Wieczorek's motion for conduct-based attorney fees in the amount of $30,000. Bowman appeals.

## DECISION

Bowman's *pro se* appellate brief identifies nine issues. She raises six issues that are relevant to the district court's custody rulings, one issue concerning parenting time, and one issue concerning attorney fees. She also raises one issue concerning an order that is not reviewable.[1]

---

[1]Bowman argues that the district court erred in a September 2014 temporary order by requiring that her parenting time with L.W. be supervised until the district court ruled on Wieczorek's request for custody on a permanent basis. A district court may issue temporary custody orders pursuant to section 518.131, subdivision 1, of the Minnesota Statutes. This court has held that "a temporary order made under Minn. Stat. § 518.131 is generally not a final, appealable order." *J.W. v. C.M.*, 627 N.W.2d 687, 696 (Minn. App. 2001), *review denied* (Minn. Aug. 15, 2001). In addition, the temporary order no longer is in force, which means that Bowman's challenge to the order is moot. *Sharp v. Bilbro*, 614 N.W.2d 260, 262-63 (Minn. App. 2000) (concluding that father's challenge to temporary custody order that was no longer in force was moot), *review denied* (Minn. Sept. 26, 2000). Thus, we need not consider the issue.

# I. Custody

Bowman argues that the district court erred in various ways with respect to its custody decision. A district court is authorized by statute to modify a prior custody order. The relevant statute states, in part:

> [T]he court shall not modify a prior custody order . . . unless it finds, upon the basis of facts . . . that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custody arrangement . . . that was established by the prior order unless:
>
> . . . .
>
> (iv)    the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
>
> (v)    the court has denied a request of the primary custodial parent to move the residence of the child to another state, and the primary custodial parent has relocated to another state despite the court's order.

Minn. Stat. § 518.18(d) (2016). When considering a modification of custody, a district court must consider the best interests of each child, including a non-exclusive list of 12 factors. Minn. Stat. §§ 518.17, subd. 1(a), 518.18 (d) (2016). The district court must make detailed findings on the best-interest factors, "may not use one factor to the exclusion of all others," and "shall consider that the factors may be interrelated." *Id.* § 518.17, subd. 1(b)(1).

This court applies a clear-error standard of review to a district court's findings of fact concerning custody issues and an abuse-of-discretion standard of review to a district court's analysis of the best-interest factors. *Pikula v. Pikula*, 347 N.W.2d 705, 710 (Minn. 1985). We defer to a district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). Accordingly, there is "scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000).

## A.

Bowman argues that the district court erred by modifying custody without making a finding of endangerment. In many cases, a district court must make a finding of endangerment pursuant to paragraph (iv) of section 518.18(d). *See, e.g.*, *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981); *Geibe v. Geibe*, 571 N.W.2d 774, 777, 779-80 (Minn. App. 1997). But in this case, the district court based its modification on paragraph (v) of section 518.18(d), which applies if "the court has denied a request of the primary custodial parent to move the residence of the child to another state, and the primary custodial parent has relocated to another state despite the court's order." Minn. Stat. § 518.18(d)(v). Paragraph (v) does not require a finding of endangerment. *See id.* Bowman does not challenge the applicability of paragraph (v). Thus, the district court did not err by not making a finding of endangerment.

## B.

Bowman argues that the district court erred by not allowing the children to express their preferences concerning custody. In determining the best interests of a child, a district

court must consider "the reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference." Minn. Stat. § 518.17, subd. 1(a)(3).

The district court made detailed findings concerning the children's preferences. At the evidentiary hearing, the district court did not allow K.W. to testify on the grounds that Wieczorek had conceded that Bowman should have custody of K.W., that it would not be in K.W.'s best interests to testify against one of her parents, and that K.W.'s testimony could have negative consequences for her then-pending truancy proceedings. In its order, the district court nonetheless found that K.W. had expressed a preference to live with Bowman but also found that her preference was influenced by Bowman's efforts to alienate her from Wieczorek. *See Schwamb v. Schwamb*, 395 N.W.2d 732, 735 (Minn. App. 1986) (concluding that "coached" preference is not "reasonable preference" and need not be considered). In any event, the district court awarded Bowman sole legal custody and sole physical custody of K.W. In light of that favorable ruling, Bowman was not prejudiced by the absence of K.W.'s testimony about her custodial preference.

The district court did not preclude L.W. from testifying about her custodial preference because neither Bowman nor Wieczorek listed her as a witness or otherwise requested that she be permitted to testify. The district court nonetheless found that L.W. was too young to have a "reasonable preference" and likely would prefer to live with Bowman. The district court did not put weight on L.W.'s likely preference because it may have been unduly influenced by Bowman and by K.W.'s presence in Iowa.

Thus, the district court did not err by not admitting additional evidence of the children's custodial preferences.

## C.

Bowman argues that the district court erred by ordering a custody arrangement that separates siblings. In determining the best interests of a child, a district court must consider "the effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life." Minn. Stat. § 518.17, subd. 1(a)(9). A custody order that separates siblings is "always unfortunate" but is not *per se* erroneous. *Kennedy v. Kennedy*, 403 N.W.2d 892, 898 (Minn. App. 1987) (quotation omitted). In some situations, the benefits of separating siblings may outweigh the benefits of keeping them together. *See, e.g.*, *Doren v. Doren*, 431 N.W.2d 558, 561 (Minn. App. 1988) (concluding that separating siblings was not erroneous because mother abused all but youngest child and father's wife would not take youngest child).

The district court had "serious concerns" about Bowman's ability to encourage a healthy relationship between L.W. and Wieczorek if Bowman were granted sole physical custody of L.W. Furthermore, the district court was concerned about K.W.'s negative influence on her younger sister. The district court's concerns are supported by the record, especially the evidence concerning the occasion when K.W. induced L.W. to run away. Thus, the district court did not abuse its discretion by issuing a custody order that results in the separation of K.W. and L.W.

9

**D.**

Bowman argues that the district court erred by not basing its decision on evidence that Wieczorek had abused the children. In determining the best interests of a child, a district court must consider "whether domestic abuse . . . has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs." Minn. Stat. § 518.17, subd. 1(a)(4). The district court found that most of Bowman's allegations of abuse related to K.W., which was of lesser significance because Wieczorek did not seek custody of K.W. The district court found that Bowman's allegations of abuse of L.W. were not credible because they were inconsistent with her own proposal to maximize Wieczorek's unsupervised parenting time, her testimony that Wieczorek and L.W. have a good relationship, and the guardian *ad litem*'s findings that L.W. did not appear to be afraid of her father. Thus, the district court did not err in its consideration of Bowman's allegations of abuse.

**E.**

Bowman argues that the district court erred by admitting the testimony of two expert witnesses who were called by Wieczorek. At the evidentiary hearing, Bowman did not make any objection to the testimony that she challenges on appeal. Thus, Bowman has not preserved the issue for appellate review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 293 (Minn. App. 2007).

10

## F.

Bowman argues that the district court erred by not considering the best-interest factors or by concluding that the best-interest factors favored an award of custody over L.W. to Wieczorek. To the contrary, the district court devoted three single-spaced pages of its order to a factor-by-factor best-interest analysis, and its findings on each statutory factor are supported by the record. Thus, the district court did not err in its consideration of L.W.'s best interests.

Therefore, the district court did not err in its rulings on custody issues.

## II. Parenting Time

Bowman argues that the district court erred by awarding her parenting time of only eight percent without making a finding of endangerment. "In the absence of other evidence, there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child." Minn. Stat. § 518.175, subd. 1(g) (2016). The district court must demonstrate an awareness of the presumption if the issue is appropriately raised. *Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010).

The district court ordered a parenting time arrangement in which Bowman has between eight and ten percent of parenting time with L.W. *See* Minn. Stat. § 518.175, subd. 1(a), (g). Bowman is correct in asserting that the district court did not acknowledge the 25 percent presumption. But a district court does not commit reversible error by ordering parenting time in an amount less than 25 percent if the parent who is disadvantaged by such an award does not object. *Hagen*, 783 N.W.2d at 219 n.4 (citing *Thiele*, 425 N.W.2d at 582). Bowman did not raise the issue before or at the evidentiary

hearing. Thus, the district court did not commit reversible error in its decision concerning parenting time.

### III. Attorney Fees

Bowman argues that the district court erred by granting Wieczorek's motion for conduct-based attorney fees and ordering her to pay $30,000.

In a dissolution case, a district court has discretion to award conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1 (2016); *see also Szarzynski*, 732 N.W.2d at 295-96. In this case, Wieczorek moved for an award of conduct-based attorney fees because Bowman relocated to Iowa without permission, which required him to file costly motions and to defend against Bowman's motions. Wieczorek submitted a detailed affidavit documenting $43,435.97 in attorney fees, including estimated fees related to the evidentiary hearing. The district court granted Wieczorek's motion and ordered Bowman to reimburse Wieczorek for $30,000 of his attorney fees.

The record supports the district court's determination that Bowman "unreasonably and unnecessarily contributed to the length and expenses of the proceedings." She relocated to Iowa with the children six months after the district court denied her motion seeking leave to relocate. She then filed another motion to relocate to Iowa, which was her third relocation motion. Bowman's own testimony reveals that she acted deceitfully when she moved to Iowa without court permission and without Wieczorek's knowledge. And there is abundant other evidence of Bowman's uncooperative conduct with regard to previous court orders.

12

Bowman contends that the district court erred by awarding more fees than Wieczorek had requested.  At the evidentiary hearing, Wieczorek testified on direct examination that he wanted Bowman to pay half of his attorney fees.  After the evidentiary hearing, Wieczorek's attorney submitted a written closing argument in which he requested fees in the full amount of $43,435.97.  The district court did not err in setting the amount of the award at $30,000 because a district court has broad discretion in such matters and because the record shows that Wieczorek incurred at least that amount of fees due to the fact that Bowman "unreasonably contribute[d] to the length or expense of the proceeding." *See* Minn. Stat. § 518.14, subd. 1.

Thus, the district court did not err by awarding Wieczorek conduct-based attorney fees in the amount of $30,000.

**Affirmed.**